RUTLAND,
February,
1842.

CALVIN G. ROBERTS *v.* FREDERICK BUTTON, ALEXANDER
MILLER, SAMUEL TOWNSEND, Jun., DYER TOWNSEND, and
HOWARD HARRIS.

Roberts
*v.*
Button *et al.*

In simple contracts, executed by agents, if the agent exceeds his authority,
he thereby binds himself, although he execute the contract in the name
of the principal.

So, too, if the credit is given to the agent, and he expressly consent to
bind himself.

But if he have authority to bind the principal, and the credit is given to
the principal, and the promise is made on behalf of the principal, the
agent is not liable.

Where the agent exceeds his authority, *in contracts under seal*, in many
cases, the more appropriate remedy is by a special action on the case.

The effect of a contract in writing may sometimes depend so much upon
the circumstances attending its execution as to require the intervention
of a jury to determine its construction, under proper instructions from
the court; but, under ordinary circumstances, the effect of every contract
in writing is a question of law.

ASSUMPSIT, upon a contract of the following tenor ;—
' For value received, we, the agents of the Wallingford
' Manufacturing Company, promise to pay Calvin G. Roberts
' ten hundred dollars and interest till paid, and this note is to
' be subject to such assessments as shall be made on the capi-
' tal stock of said company, subscribed for by the said Rob-
' erts, and if such assessments shall not cover the full
' amount of this note, then the balance to be paid in two
' years from date, but the assessments made are to be indorsed
' when they become due.

' Wallingford, 25th March, 1837.'

This contract was signed by the defendants, and the words,
' agents of the Wallingford Manufacturing company,' were
added at the right hand of the signatures.

Plea, non assumpsit. Issue to the court.

On the trial in the county court, it was admitted that the
contract declared upon was signed by the defendants, and
that the consideration therefor was the execution of a deed
of certain lands and a water privilege, by the plaintiff to the
defendants, dated March 22nd, 1837. This deed was intro-
duced as evidence, and, immediately after the acknowledg-
ment in the deed of the receipt of the consideration money of
the defendants, are these words ; ' agents or trustees of the

Rutland,
February,
1842.

Roberts
v.
Button et al.

Wallingford manufacturing company.' But in no other part of the deed are the defendants named as such agents or trustees.

The defendants introduced in evidence a written agreement, dated the seventh day of February, 1837, signed by the plaintiff and defendants, and by more than twenty other persons. By this agreement the parties thereto formed themselves into a company, under the name of the Wallingford manufacturing company, for the purpose of manufacturing and selling woolen and cotton cloths, or either, and for the transaction of all such business as is usually done by manufacturing companies. This agreement provided for the appointment of trustees or agents to transact the business of said company and authorized such trustees to purchase of the plaintiff, and other persons therein named, certain lands and water privileges owned by them, and buildings thereon, " *on the terms they have offered to sell to the company*," and to take conveyances thereof to themselves in trust for the company, and to erect a factory, &c. And a further provision was made, that all business transacted by such trustees or agents, for said company, should be in the name of the company, for the mutual benefit of the members thereof. And, to raise funds to enable such trustees to proceed with the business, the sum of $15,150, was, on the day of the date of said agreement, subscribed by the signers thereof, as stock, and the plaintiff's subscription was one thousand dollars. The subscription was to be paid to the trustees in installments, at such times as they should appoint and in such sums as they should assess, the assessments to be made equal, in proportion to the sums subscribed ; and if any subscriber neglected to pay his assessment, thirty days notice thereof being given, he thereby forfeited his stock to the company. The agreement further provided that the trustees should, in no case, make any contract that should be binding on the subscribers as individuals, or in any way oblige any one of them to pay more than the sum originally subscribed by him, and in case the trustees should make any such contract, then they were to pay back to each member of the company such sum as he might be compelled to pay on such contract exceeding his subscription. The profits and losses of the company were to be borne by the subscribers in pro-

portion to their respective interests and capital stock. The agreement also contained a provision for obtaining an act from the legislature, incorporating said company, as soon as possible, and when such act of incorporation should be obtained, the trustees were to immediately transfer to such corporation all the real and personal estate of the company, including the capital stock, and the subscribers to said agreement were thereby to become owners in said corporation of the same proportional interest that they owned in the company formed by said agreement.

It appeared that the plaintiff's offer to sell his land, water privilege, &c., referred to in said agreement, was made in writing, and was, in substance, as follows :—

'I will sell my clothiers' works and land, carding machine, 'building, privilege, &c., for one thousand dollars, retaining 'the use of the works until the first day of January next, 'and then give unlimited possession ; the company to have 'the privilege of digging the aqueduct, and what land is 'necessary. Mr. Post has the right of an aqueduct for his 'tan works for ten years from 1835. I include with the 'works the kettles, tools, &c. The property to be considered 'ered as so much stock paid in advance, and interest to 'commence on the first of January, 1838.'

After the execution of the written agreement by the members of said company and on the same day, viz., February 7, 1837, at a meeting of said company, the defendants were appointed trustees or agents of said company, to hold their offices until the annual meeting of the company in January, 1838, and until others were appointed, and they accepted the trust.

On the eleventh of February, 1837, at a meeting of said company, a resolution passed unanimously instructing the trustees to proceed with the business for which the company had been formed as soon as they, in their judgment, should think the capital stock subscribed sufficient to warrant them in so doing.

It further appeared, from the records of said company, that assessments were made, from time to time, by said trustees, on the stock, or subscriptions, of the members of the company, and that the assessments upon the plaintiff's subscription amounted to $550.00.

Roberts
v.
Button et al.

An act of incorporation was obtained from the legislature at the session thereof held in 1839, under which the company organized, and the trustees, on the 20th of February, 1839, conveyed all the property and estate of the company formed by said written agreement, to said corporation, in accordance with the provisions made, relating thereto, in and by said written agreement.

Upon this evidence, the county court decided that the plaintiff could not maintain this action, and thereupon the plaintiff became nonsuit, with leave to set aside the nonsuit if the supreme court should be of the opinion that the county court erred in their decision.

*D. Roberts, Jun.* and *S. Foote* for plaintiff, contended that the defendants made themselves liable by attaching their names to the note in question, and that, to rebut this, it devolved upon the defendants to show, affirmatively, that the note was the note of the Wallingford manufacturing company; that there was, at the time, such a company in being; that the defendants were its agents, with power to bind the company, and pursued their authority, and that the credit was given to the company and not to the defendants, and, in support of the point that the defendants were personally liable, they cited the following authorities ;—*Mott* v. *Hicks*, 1 Cowen, 513, 536 ; *White* v. *Skinner*, 13 Johns. 307 ; *Barry* v. *Rush*, 1 Term R. 691 ; *Sumner* v. *Williams*, 8 Mass. 161 ; *Thatcher* v. *Dinsmore*, 5 Mass. 299 ; *Foster* v. *Fuller*, 6 Mass. 58 ; *Horsley* v. *Bell et al.*, Ambler, 769, 772 ; 1 Bro. C. R. 101, in note ; Hard. 205 ; Paley's Agency, 295, 296, note o ; *Cullen* v. *Duke of Queensbury et al.*, 1 Bro. C. R. 101, cited in *Ives* v. *Hulett*, 12 Vt. R. 326 ; *Eaton et al.* v. *Bell*, 5 Barn. & Ald. 27, (7 E. C. L. 13,) *Lanchester* v. *Tucker*, 1 Bing. 201 ; *Same* v. *Freron*, 2 Bing. 361 ; 1 Saund. Pl. & Ev. 74 ; *Fox* v. *Drake*, 8 Cow. 191 ; Combe's case, 9 Coke, 76, 77 ; *Anon.* Moore, 70, pl. 191 ; *D'Abridgcourt* v. *Ashley*, Moore, 818 ; *Talbot* v. *Godbolt*, Yelv. 137, 147 ; *Bacon* v. *Dubarry*, 1 Salk. 70 ; *Clayhill* v. *Fitzgerald*, 1 Wils. 28, 58 ; *White* v. *Cuyler*, 6 Term R. 176 ; *Wilks* v. *Backs*, 2 East, 142 ; *Duval* v. *Craig*, 2 Wheat. 45, 56, n. a ; *Stone* v. *Wood*, 7 Cowen, 453 ; *Spencer* v. *Field*, 10 Wend. 87 ; *Fowler* v.

*Shearer*, 7 Mass. 14 ; *Stackpole* v. *Arnold*. 11 Mass. 27 ; *Elwell* v. *Shaw*, 16 Mass. 42 ; Ham. Parties, 60 ; Bayl. on Bills, 68–9, n. 46 ; *Appleton* v. *Binks*, 5 East, 148 ; *Cass* v. *Ruddle*, 2 Vern. 280, cited in Paley on Agency, 300, n. f ; *Burrell* v. *Jones*, 3 Barn. & Ald. 47 ; (5 E. C. L. 223 ;) *Norton* v. *Herron*, 1 Carr. & P. 648 ; (11. E. C. L. 511 ;) *Kennedy* v. *Gouveia*, 3 D. & R. 503 ; (16 E. C. L. 174 ; *Hills* v. *Bannister*, 8 Cowen, 31 ; *Tippetts* v. *Walker*, 4 Mass. 595 ; *New England Ins. Co.* v. *DeWolf*, 8 Pick. 56; *Holmes* v. *Dana*, 12 Mass, 190 ; *Trustees, &c.* v. *Allen*, 14 Id. 172 ; *Terry* v. *Fargo*, 10 Johns. R. 114 ; *Sanford* v. *Mickles et al.* 4 Johns. 224 ; *Kilgour* v. *Finlyson*, 1 H. Bl. 155 ; *Abel* v. *Sutton*, 3 Esp. R. 108 ; Chitty on Bills, 50; *Gardner* v. *Baillie*, 6 Term, 591; *Hogg* v. *Smith*, 1 Taunt. 347, and *Hay* v. *Goldsmid*, there cited ; Chitty on Bills, 37; *Rossiter* v. *Rossiter*, 8 Wend. 494 ; *Emerson* v. *Providence Hat Man. Co.* 12 Mass. 237 ; 4 Id. 595 ; 11 Id. 27 ; 12 Id. 173 ; 9 Johns. 334; 19 Id. 60; 15 Id. 44; 3 Johns. Cas. 70; 8 Cowen, 31; 7 Wend. 315; 9 Id. 68; 10 Id. 87, 271; 11 Id. 477; 7 Id. 207; 5 E. C. L. 223; 25 Id. 135; 2 Kent's Com. 632; 2 Strange, 955; 5 M. & S. 345; 9 Serg. & Rawle, 212; 2 Pick. 221; 17 Wend. 40; 2 Johns. 48.

And they further contended that where an agent has a known responsible principal, whom he has authority to bind, and all the formal acts are done, in the manner which the law makes necessary to bind the principal, there may yet remain a question of fact for the jury, under proper directions from the court,—a question of intent ;—to whom was the credit given ? and that the county court erred on this point, and in support of this rule, they cited *Rathbone* v. *Budlong*, 15 Johns. 1 ; *Gill* v. *Brown*, 12 Id. 385; *Walker* v. *Swartwout*, Id. 446; and *Eaton* v. *Bell*, and *Rossiter* v. *Rossiter*, before cited.

To the point that a partner might sue his copartners, at law, upon an express promise made between them, they cited 2 Conn. R. 425; 3 Day 506; 2 Caines, 293; 14 Johns. 318; 12 Id. 401; 17 Id. 80; 15 Id. 159; 9 Mass. 304; 12 Id. 34; 3 Id. 364; 1 East, 20.

*E. N. Briggs*, for defendants.

I. The note declared upon in the plaintiff's declaration is

virtually a *contract*, instead of an ordinary promissory note. 1. The contract specifies the character in which the defendants contract or promise, ' We the agents of the Wallingford Manufacturing Company promise to pay,' signed by defendants, ' Agents or trustees of the W. M. Co.' 2. The defendants make the payment subject to assessments to be made upon the capital stock of the company, upon which assessments the plaintiff was liable for his share of the contributions, from which payment was to be made.

II. 'We contend, from the facts in the case, first, that upon the face of the note or contract, the defendants are not liable. All contracts are to have a reasonable construction, and the form of expression made use of is not so material as the *intention* of the parties, when that can be ascertained from the contract.

In cases of deeds and covenants, the agent should use the name of his principal, but not so in simple contracts. In this case the defendants did not profess to act as principals. The language of the contract is similar to that used in *Rathbone* v. *Budlong*, 15 Johns. 1, where the note was ' I promise for the Susquehannah C. and W. M. Co.' ' S. Budlong, agent.' Cited in Hammond on agency, 322. In *Mann* v. *Chandler*, 9 Mass. 335, the note was ' I, the treasurer of the D. T. Corporation, promise to pay S. M. or bearer,' &c., signed ' G. L. Chandler, treasurer.' *Dawes* v. *Jackson*, 9 Mass. 490. *Arlington* v. *Hinds,* Chipman's R. 431. *Hodgson* v. *Dexter*, 1 Cranch, 345. *Mackbeath* v. *Haldimand*, 1 Term R. 172. *Proctor* v. *Webber*, 1 D. Chipman's R. 373.

It is an important consideration to ascertain whether the agent, by his contract, binds his principal.

When a man is known to act as agent, and his principal is known, the rule is that the agent, though the person immediately making the contract, is not subject to personal responsibility. Hammond on Agency, 324.

The plaintiff was aware of the character in which the defendants acted. *N. E. In. Co.* v. *De Wolf*, 8 Pick. R. 56. In this case the form was not regarded, but the intention of the parties. In *Mott* v. *Hicks*, 1 Cowen, 513, it is ruled that an agent, having authority, does not bind himself. If the name of the party to be charged appear in the contract, the

particular form of expression is not essential. Hammond on Agency, 323.

In the case of *Chelton* v. *Darling*, 2 Conn. R. 435, Darling was sued as acceptor of a bill, and in the money counts. The bill was drawn on Darling, Agent, C. C. and although Darling misapplied the money, he was held not liable to the action. Bailey on Bills, page 75, (in note.) The defendant, in this case, acted under the authority of the association and of course bound the association.

In *Stowe* v. *Wise*, 7 Conn. R. 219, Daggett, justice, says, ' It may be incidental to an agent's power to borrow money, ' to give promissory notes, and to do other acts in the ordinary ' course of the company's business, but not to convey real ' estate.' In *Magill* v. *Hinsdill*, 6 Conn. R. 464, notwithstanding the personal form, as ' I, M. agent, for the consider- ' ation of $12,000 received to my satisfaction,' covenant in behalf of the Co, as to seizin, &c. signed by ' M. agent for the Co.,' it was held to be the deed of the company.

III. If the defendants are made liable to the plaintiff, in this suit, the plaintiff would be bound to contribute his share under the agreement. If the parties are partners or jointly concerned, they would come within the rule of the cases of *Mainwaring* v. *Newman*, 2 Bos. & Pul. 124 ; *Eastman* v. *Wright*, 6 Pick. R. 319. In partnership transactions, one cannot sue other partners. *Beach* v. *Hodgkiss*, 2 Conn. R. 697. *Esty* v. *Whipple & Co.* 12 Vt. R. 373.

IV. If a bill or note be signed by an agent, the agency being stated on the instrument, the principal is bound if the person acting had authority ; if he had not authority, he is then liable upon a special action. *Pothill* v. *Walton*, 3 B. & A. 114. *Long* v. *Colburn*, 11 Mass. 97. *Ballou* v. *Talbot*, 16 Mass. 461.

The members of incorporated societies or trading companies are liable to third persons as partners, and stand in that relation to each other. Comyn on Contracts, 474.

The opinion of the court was delivered by

REDFIELD, J.—The only question arising in this case is whether the defendants are personally liable upon this note. In order to come at any very satisfactory conclusion in regard

to this subject, it is necessary to examine the authorities, and the facts in the case, somewhat in detail.

1. And I will say, *in limine*, that if this is the express personal contract of the defendants, for one I am not inclined to hold that the plaintiff is precluded from maintaining the action, because he is himself a member of the association, and ultimately liable to contribute something towards indemnifying the defendants. I believe this naked proposition not maintainable in its full extent. If the plaintiff were himself liable to refund, in some other form, the whole amount of the judgment here recovered, such liability, to prevent circuity of action, might be relied upon in defence. But that is never the case where he is liable, incidentally, in some way, for a portion only of the amount recovered. I think the modern decisions will justify us in getting over this objection, although there are many cases to the contrary. Such a case is not like one sueing a firm of which he is himself a member, where he must be both plaintiff and defendant. But this point is, perhaps, doubtful in the mind of the court, although we do not lay any stress upon it.

2. Neither do we incline to decide this case against the plaintiff on the ground, that even if the defendants did exceed their authority, the action against them should not be upon the contract, but a special action on the case. We think the better opinion, upon this subject, is, that an agent, who undertakes to bind a principal by simple contract, but without authority, does bind himself. *Meech* v. *Smith*, 7 Wendell, 315. This is just and reasonable and most of the cases are in accordance with it ; but all are not. *Ballou* v. *Talbot*, 16 Mass. 461. In regard to contracts under seal, especially where the agent attempts to convey land without authority, a special action on the case may be the most appropriate, perhaps the only remedy. *Clark* v. *Foster*, 8 Vt. R. 98. But this remedy goes upon the ground of a virtual fraud.

3. We come to consider some other grounds, upon which the claim is attempted to be maintained. 1. It is said the question of intention is one of fact, and should have been so decided. This question does not arise in the present case, as the issue of fact was joined to the court, and it does not appear that the court did not so consider the question of in-

tention, and determine it as a matter of fact. It is true, doubtless, where, in a written contract, equivocal terms were used, which the court would construe as importing a personal undertaking, with reference to one state of circumstances, and the contrary, in a different state of the surrounding facts, and the testimony conflicts in regard to the circumstances attending the contract and affecting the construction of the terms used, the question of intention, with proper instructions, must go to the jury. *Eaton* v. *Bell*, 5 B. & Ald. 34. So, too, where the entire contract is void, the question of intention is one for the jury, to be determined with reference to all the circumstances of the case. But the cases are rare where it would be necessary to have a jury inquire into facts affecting the construction of a written contract. Such a case may be supposed. A contract, payable in *merchantable stock*, might mean one thing in Vermont, and quite another thing in Wall street. So, too, with many other terms, which might be named. This might, in some cases, make it necessary to inquire into the language, or even the customs, of a country, in order to give proper effect to a written contract even ; but the cases, I said, are rare. The case of *Eaton* v. *Bell* very well illustrates the subject. It is not very obvious how, in any view, there could have been any question to be submitted to the jury in the present case.

2. A class of cases is referred to, and relied upon by the plaintiff, where persons have contracted (usually under seal) as administrators, executors, or guardians, and have been held personally liable. These cases, as far as I have examined them, have been cases of covenants in deeds, conveying land. Such are the Massachsetts cases cited. The reason of these decisions is very apparent. The persons had no authority to enter into any such contracts, in their official capacity, hence they bound themselves personally. But had they had any authority to contract in their official capacity, they could not have been held personally liable. *Macbeath* v. *Haldimand*, 1 Term R. 172. *Hodgson* v. *Dexter*, 1 Cranch, 345. The case of *Bunnell* v. *Jones,* 3 B. & Ald. 47, at first blush, seems a strong one in favor of the plaintiff. But, upon examination, it will be found reducible to the same principle with the others above alluded to. The defendants contracted expressly 'as solicitors' of the assignees of a

bankrupt. Now, as such solicitors, they had no authority to contract on behalf of the assignees. It did not appear that they had any authority to contract on the part of the assignees, or that they professed to have any such authority, or that credit was given to *them* and not to the defendants. The term 'solicitors,' *ex vi termini*, has no natural fitness to show an undertaking, on the part of another, (unless it be a matter of pleading in a court of chancery,) any more than *brother*, or *friend*, or *adviser*, or *confessor*, or almost any other relative term applicable to persons.

3. Another class of cases, very extensive, and of very undeniable authority, has been urged upon our consideration as governing the present case. These are cases where one contracts under seal, professedly on the part and behalf of another, but signs his own name and affixes his own seal. Here the agent has been held personally liable. This is upon the ground that if one executes a contract, under seal, on the part and behalf of another, and does not intend to bind himself, personally, he must execute the contract in the name and affix the seal of the principal, otherwise the agent will be personally holden. It is upon this ground that the cases of *Appleton* v. *Binks*, 5 East, 148, *Wilks* v. *Backs*, 2 East, 142, were decided. It is not material whether the contract be signed, 'James Brown by Mathias Wilks, or Mathias Wilks for James Brown,' but the contract must appear to be executed in the name of the principal, else the agent will be liable. *Spencer* v. *Field*, 10 Wendell, 88, is of the same character. The contract was under seal, and in the name of the agent. It should be A. B. (the principal) grants &c., by his attorney, C. D., and not C. D., as attorney for A. B., grants. So *Stone* v. *Wood*, 7 Cowen, 453, is to the same effect. The contract is under seal, and the agent contracts in his own name and seals with his own seal.

4. The case of *Mott* v. *Hicks*, 1 Cowen, 536, cannot be made to operate much in favor of the plaintiff; for the defendant is there made liable upon his special guaranty, and not upon the note which he executed in the name of the company. The court held him not liable upon the note, but that the company were liable.

5. The cases of *Hills* v. *Banister*, 8 Cowen, 31, and *Brockway* v. *Allen*, 17 Wendell, 40, cannot, I think, be

made available as authorities ruling this case for the plaintiff. It is true the form of these actions is *assumpsit*, and the contracts are promissory notes, and were given in payment for articles, purchased for churches, of which the defendants were trustees, and the notes were signed by them as such trustees. Thus far there is a very striking similarity in the cases ; but it nowhere appears, in either case, that the defendants had any authority to enter into such contract, on the part of their respective churches, or that the credit was given by the plaintiff to the churches. For the addition of trustees to defendants name does not show even that they intended to contract as agents, much less that the plaintiff so understood it. These differences are all important, and, in the opinion of a majority of all the members of this court, who have heard the argument of this case, at different times, is decisive of the case. The cases last referred to were decided expressly upon these grounds. In the latter case the question arises on a plea in bar, and Cowen, justice, in delivering the opinion of the court, says, ' it is not enough to ' aver that they signed *as agents*, their appointment, (and ' authority) must be set forth as distinct, substantive, issua- ' ble facts.' (I have introduced the words in the parenthesis from another portion of the opinion.) I am content with the doctrine of these cases. It is, that where there is a want of authority in the agent to make the contract, he is personally responsible.

We return then to the two propositions with which we started. If the defendants are liable, it must be upon one of these grounds; either that they did intend to contract personally, and so expected the plaintiff to understand it, or else, in the contract which they did make, did exceed their authority.

1. Was it the understanding of the parties that the defendants did assume a personal responsibility in regard to this note ? I think nothing more obvious than that no such thing was in the most remote apprehension of any of the parties, i. e. either the plaintiff, or defendants, or the company. 1. The company wished to make the purchase. 2. The plaintiff's offer in writing to make the sale is addressed to the company, and concludes, ' the property to be considered so much *stock, paid in advance.*' Does this seem consist-

ent with the idea that he expected to have the promissory note of the trustees for it? Nothing could be more absurd than the attempt to extort such an inference from the transaction thus far.  3. The company authorized the defendants to buy this property on *the terms of the plaintiff's offer.*  4. They did buy it, as I will soon attempt to show, on the very terms they were authorized to take it upon ; and 5, the company immediately entered into the use and enjoyment of the property.  It is true the land was conveyed to the defendants personally, but this was, no doubt, for the convenience of reconveyance to the corporation, when one should be obtained, and the fact that the defendants held the land in trust for the company is fully disclosed in the deed.  And if that conveyance has not yet been made, it cannot affect the case.  The defendants must be considered as holding as trustees for the corporation or company still.  Under these circumstances, it seems to me, nothing could be further from the probable intention of the parties than to say the credit was given to the defendants, personally, and that the plaintiff expected their personal guaranty in payment of the price, and that they expected to give it.  The very note, too, shows that they intended to sign only as agents of the company, and this known to the plaintiff, who was himself a member of the company, and conversant, of course, with all their doings in the premises.  To say, then, that this could, at the time, have been understood as a personal undertaking of the defendants, by any of the parties concerned, is to suppose what is not indicated, as it seems to me, by any one important circumstance in the whole transaction.

I come, lastly, to consider what is, perhaps, the most reasonable ground of argument that these defendants should be held personally liable upon this note, i. e. that in giving it they exceeded their authority.  For convenience, I have often spoken of the defendants' contract as a note, which indeed, strictly and technically, it is not.  In giving a construction to this contract, we may, and, indeed, must, take into consideration the subject matter of the contract, the time, place, and manner of its execution, and the other writings connected with the same contract, and the defendants' authority and character.

1 The plaintiffs were willing their property should go as

advanced stock.　But they had subscribed but one thousand dollars, and that was just the amount of this purchase.　In order to have this all reckoned as stock paid in advance, it was necessary that all the stock should be assessed to its full amount, whether the funds were needed or not.　This the company might not choose to have them do.　And the company might restrict their trustees as they pleased.　They certainly had not then so declared, unless directing the purchase of plaintiffs' stock, on his terms, did amount to assessing the subscriptions to the full sum, which it clearly did not.　As prudent agents of the company, then, the defendants provided that if it should not become necessary to assess to the full amount, so that all the price of plaintiffs' sale could go in the way proposed, the balance should be paid him in money.　This was the only arrangement they could have made, short of committing themselves to assess all the subscriptions to the full amount, which they had no power to do, unless it was necessary to carry on the business of the company.　The defendants did then give just such a contract as the plaintiff must have intended, by his offer.　His offering to have it reckoned as advance stock must have been intended to be qualified with the condition, if it became necessary to assess the subscriptions to the full amount.　The plaintiff did not, by his offer, intend to pay the full amount of his subscription while others paid but half of theirs.　So, too, the company must have received his proposition with this qualification.　The defendants, as prudent trustees, have given him a certificate of stock, paid in, to the amount of $1000, with this very qualification annexed, i. e. if it became necessary to assess to the full amount of the subscriptions, otherwise the company shall pay back the balance.　So that I think it is obvious the defendants did not execute a promissory note, nor any writing, varying the contract from the terms of the plaintiff's offer, which, by express agreement of the company, they were directed to accept.　This, then, of itself, shows they did not exceed their authority.　This contract, too, is strictly in accordance with that provision in the fundamental agreement of the company, that the trustees shall not pledge their credit beyond the amount of their subscriptions.　For the very terms of the contract provide that, in that event, the whole amount of the contract shall be

reckoned as advanced stock. So that, as to any liability, beyond the amount subscribed, the contract is, in its very terms, *felo de se.* The fundamental contract of the association, too, provides that ' the business shall be transacted in the *name of the company,* by their agents or trustees, for the *mutual benfit of the undersigned,*' and then directs these defendants to make this very purchase, on the identical terms they did make it, and they received the property, and now the defendants are to be personally liable, because, forsooth, they exceeded their authority, and thereby practiced a virtual fraud upon the plaintiff, who was himself a member of the company, and conversant of all the circumstances, and of course, consenting to run his own risk as to the validity of defendants' authority. If any case of more absolute justice, on the part of defendants, can be imagined, and if it be not as strictly in accordance with long established principles and, precedent of the law, as it is with justice and equity, I confess myself incompetent to apprehend, so far, the just relations of things, or rightly to distinguish between contrariety and coincidence. This is the judgment of a majority of the members of this court, before whom the case has been argued. *Proctor* v. *Webber*, 1 D. Chip. R. 371, is, in my apprehension, an authority, to the full extent, for the decision we now make.

Judgment affirmed.