<span style="float:right">WINDSOR, *February,* 1843.

Wheelock *v.* Moulton *et al.*</span>

This principle will clearly entitle the plaintiff to a judgment on this report, and

The judgment is affirmed.

---

GILL WHEELOCK *v.* JOHN MOULTON, RUFUS HUTCHINSON, and the WOODSTOCK MANUFACTURING COMPANY.

(<i>In Chancery.</i>)

By the law of this state, corporations can convey lands, tenements, and hereditaments only by deed executed by some agent, thereunto authorized by vote of the corporation.

The shareholders, as such, cannot convey the real estate of the corporation, though they all join in the deed.

The name and seal of the principal must be affixed to a conveyance by an agent; or, in the case of a corporation, what, by statute, is made equivalent, the vote of the corporation giving the power to convey, must be recited.

When words made use of in a conveyance, are contradictory, those more specific and particular will control those which are more general.

In case of apparent contradiction in the terms of a deed, the subsequent conduct of the parties may determine the sense in which they understood it at the time of its execution.

THIS was an appeal from a decree of the court of chancery, in favor of the orator, upon a bill of foreclosure, in which the orator alleged, that the defendants, Moulton & Hutchinson, on the 3rd day of September, 1835, by deed, under their hand and seal, in which they described themselves as " sole proprietors and owners of all the shares of the Woodstock Manufacturing Company," conveyed to the orator " a certain piece of land, lying and being in Wood- ' stock, in the county of Windsor, and state of Vermont, ' described as follows, viz. : it being two hundred shares, ' numbers as follows—No. one to· two hundred, inclusive, ' one hundred dollars each share, and being all the shares of

' said company in the capital stock of the manufacturing ' company established at Woodstock," &c. — to which deed there was a condition of defeasance upon the payment of a note of the same date, for the sum of $14,000, executed by the said Moulton and Hutchinson to the orator ; that the consideration for said note was paid to said Moulton and Hutchinson for, and the same went to the use of, the said company ; that said company, though incorporated by statute, were not then organized, and had no officers appointed, but owned certain real estate, (described) and claiming that the same was conveyed to the orator by said deed, and praying that said Moulton & Hutchinson, and said manufacturing company might be decreed to pay the amount due on said note, or be foreclosed, &c.

The defendants, Moulton & Hutchinson, did not make answer, and the bill, as to them, was taken as confessed. The manufacturing company answered, alleging an organization of the company and appointment of officers, on the 28th of February, 1835 — the division of the stock into two hundred shares — and a deed from the defendant, Moulton, to the company, of all the land mentioned in the bill, in part payment for shares ; admitting the execution of the mortgage mentioned in the bill, but denying that it was intended as a conveyance of any thing more than the said two hundred shares, which, it was admitted, were all the shares in the company stock, and denying that the consideration of the note was received for, or went to the use of, said company.

It was thereupon referred to a master to ascertain the amount due the orator, who reported the sum of $2695.81, which the court decreed should be paid by a certain time, specified, or that, in default thereof, the defendants should be foreclosed, &c.

After argument by *T. Hutchinson* for orator, and *O. P. Chandler* for defendants, the opinion of the court was delivered by

- REDFIELD, J. — It is hardly necessary to say, that, if the orators prevail here, it must be, as in all cases, *secundum allegata et probata*. This is a bill of foreclosure, upon the land described, counting upon the deed, as a mortgage of the land, executed by the company. It is neither a bill to

compel the company to assume the payment of the debt, as one contracted by their agents, for their benefit, nor, to compel them to perfect an imperfect conveyance; but merely a common bill of foreclosure, giving, as every pleader should do, the *construction* of the deed upon which the orator bases his claim.

To enable the orator to succeed in the present bill, he must make out, 1st, that the deed is, in legal effect, the proper deed of the corporation; and, 2nd, that it was the intention of the instrument to convey the *land* belonging to the company, instead of the *shares*.

There is a prior question, which has been, to some extent, discussed, but, as it is in no sense decisive of the case, it is not deemed expedient to devote much time to the examination of it. It is the question, how far the debt is the proper debt of the corporation. It would seem to be, in terms, the debt of agents, contracted, no doubt, for the benefit of the company. In this state of the case there is nothing improbable, either in the agents mortgaging their shares in the corporation, or in the corporation mortgaging their land and building as security.

1. Upon the question, how far the deed is, in terms, the deed of the corporation, it seems not a little difficult to argue the affirmative from the contract. The deed is signed by the names of Moulton and Hutchinson, with no addition whatever, and, in the body of the deed, they describe themselves, as " proprietors and owners of all the *shares* of the Woodstock Manufacturing Company." When it is considered that a corporation is a mere abstraction, a mere existence in law, and can act only by its votes, through its agents, and that a power to convey land must be strictly followed, it is in vain to argue, that this deed is, in terms, or in legal effect, the deed of the corporation. It is well settled that, at common law, a corporation could only convey land by its corporate seal. 4 Kent's Com. 457. Real estate must always be conveyed according to the *lex loci*. And by the law of this state, then in force, corporations could only convey their lands and real estate, by the deed of their president, reciting the vote of the corporation authorizing the conveyance. In order to bind the corporation, the deed must be theirs, either expressly or by adoption. Angel &

Ames, 109, 115, 168. The fact that the signers of this deed owned the whole of the shares, will make no difference, in regard to the necessity of a vote of the corporation, in order to convey the land. The *title* to the land was in the corporation, not in the individual stockholders. The deed of one, or of any number of the stockholders will not affect the *title* of the land. The share owners are not tenants in common of the land. They have no title, whatever, to any of the property of the corporation. It is true that one, who owned all the shares, might control the corporation, and so he could if he owned a majority of the shares; but he could, in either case, do it only by a vote of the corporation, at a meeting held in strict accordance with the statutes of the corporation. This, in the present case, was not attempted. And the deed is what its terms import — that of Moulton and Hutchinson, in their private capacity, as the owners of all the shares in the corporation, for the same reason that any man, who professes to convey the title of land, or other property, does it as the owner of that property.

So strict is the law in regard to the conveyance of land by a power, that had these persons been authorized by the vote of the corporation to convey the land, this deed must have been wholly inoperative. *Wilkes* v. *Berk*, 2 East, 142; *Roberts* v. *Button*, 14 Vt. 195, and cases there cited.

2. Upon the question how far this deed is a conveyance of the land, a majority of the court have the same difficulty in coming to an affirmative conclusion. There is no principle of construction better settled, or which more commends itself to good sense, than that general words in a contract will be explained and controlled by more particular and specific words, in the same instrument, and regarding the same subject matter. And the only ground upon which it has ever been argued here, that the land was conveyed, is the general terms in the deed — "a certain piece of land lying and being in Woodstock, &c. — *described as follows, viz.: it being two hundred shares*, numbers as follows — No. one to two hundred inclusive, one hundred dollars each share," &c. How any one, from the deed alone, should suspect the intention of conveying the land and buildings of the corporation, and not the shares, is past my comprehension. It is true the subject matter of the conveyance is

denominated a "piece of land." This seems to have been a mistake as to the law, in the conveyance, in supposing these shares to be real estate. It is much the same as if one should describe a carding machine as real estate. And, for many years it was doubted how far machinery attached to the realty passed by deed. And to show that this supposition is not altogether far-fetched, we have only, as chief justice Marshall once said, in a similar case, to take the contract, I mean the original deed, "by its four corners, and let it speak for itself." . It is a contract of mortgage executed upon a blank, with the name of the company and the blank of the condition, and the word *shares* and *No.* and even the clause which seems to have raised all the doubt — "*piece of land*" — in the blank; so that it seems this corporation, not only procured blanks for the *conveyance* of their shares, which is common, but blanks, in full, were also procured for the very convenient purpose of enabling the owners of shares to mortgage them as occasion might require. And in order that these mortgages should stand the test, these shares, with the word "No." and a blank for the figure, were described, *in print*, as a "piece of land, lying and being in Woodstock, in the county of Windsor," &c. This, to my mind, sufficiently explains how this incongruity in these blank mortgages occurred. The printer was no great lawyer, and well supposed the shares in a corporation, where extensive buildings were then in view, savoried strongly of the realty. This may not be the most dignified mode of explaining the absurdity of such a contradiction, in the terms of this deed, but it is the truth. If this be not the true explanation of the dilemma into which this contract brings us, it must be supposed that the parties, after drawing their contract, procured a portion of it to be put in print, and the remainder to be filled with the pen, which is too absurd to be entertained. Hence, we conclude that, although the printer, or the parties, might not know precisely whether these "shares" were of the realty, the parties to this deed did know whether the grantors intended to convey two hundred *shares* in this corporation, as being the owners of those shares, or, on the contrary, as agents of the corporation, to convey the land and buildings of the corporation. And if, as in other cases, we are to be permitted to infer this inten-

tion from the language used, the situation of the parties, or their subsequent conduct, there can be no doubt the former was the intention of the deed.

It is sure the shares in the corporation, and this land and buildings, were not identical, even at the date of the deed. The latter had been conveyed for a little more than one half the former, but a few days before. It was, doubtless, at that time expected the value of the shares would greatly increase, while the land and buildings, at most, could not be expected to grow much more valuable ; and the buildings, especially, would be subject to many casualties. Hence it was natural to expect that the orator would have preferred the contract as it was taken, and good reason can be assigned why Moulton and Hutchinson would not as readily have acceded to this demand.

The orators, too, after having taken their deed, instead of recording it, where deeds of lands are to be registered, in the office of the town clerk, put it upon record in the office of the clerk of the *corporation*, where *transfers* and *mortgages* of *shares*, are required by the by-laws to be recorded, where it remained for about four years, until the shares had become valueless, Moulton and Hutchinson, and the corporation insolvent, and the orator's only resort, to the land and buildings of the corporation, to which, if he could establish a priority of claim, by way of this mortgage, it would be important. The deed is then, for the first time, recorded in the office of the town clerk, and this bill filed.

In this state of the case, a majority of the court think there is no good ground for sustaining the bill against the corporation.

The decree of the chancellor is reversed, and the cause remanded to the court of chancery, with this mandate, that the bill be dismissed, with costs, as to the corporation, and that the orator be suffered to take such a decree, against Moulton and Hutchinson, the other defendants, as may be consistent with the scope and prayer of his bill, and as he may be advised by counsel.