FOR THE

### SECOND JUDICIAL CIRCUIT.

JUNE TERM, 1851.

---

PRESENT,

Hon. STEPHEN ROYCE, CHIEF JUDGE.
Hon. ISAAC F. REDFIELD, } ASSISTANT JUDGES.
Hon. DANIEL KELLOGG, }

---

DAVID GORHAM *v.* GEORGE W. DANIELS, FESSENDEN CLARK, ROD-
NEY BAXTER AND DAVID AVERILL.

*Statute of uses. Dower. Right of entry of dowress. Freehold
estate commencing in futuro.*

The English statute of uses of Henry 8 is not in force in this state.

When land is conveyed, reserving an estate therein during the lives of the grantor
and his wife, the wife not being party to the deed, the estate descends, upon
the decease of the husband, to his personal representatives, and the wife is en-
titled to dower therein.

And, as dowress, the wife, previous to her dower being assigned, has the same
right of entry upon the land, whether as against a stranger or her co-tenant,
which the husband had during his life.

Gorham *v.* Daniels et al.

Under the statutes of this state in reference to conveyancing, there is no objection whatever to the creating of a freehold estate, in terms, to take effect in future.

TRESPASS *quare clausum fregit.* The action came, upon exceptions, from WINDHAM county court. Plea, the general issue, and trial by the court, September Term, 1846,—B. ORMSBEE, Assistant Judge of Windham county court, presiding. The trial was had upon a case stated by the parties substantially as follows.

On the twenty first day of February, 1831, Amaziah Richmond, being well seized in fee of a certain tract of land in Westminster, conveyed the same, by deed, duly executed and recorded, to Warren Richmond, by metes and bounds, but with this reservation;—" Meaning to convey one half of the above described land, with one " half of the building standing on the premises, and the other half " not to come into possession of it not till after my decease, Ama- " ziah Richmond's and Sarah Richmond's decease ;—it is meant to " convey the whole of the above described land after the death of " Amaziah Richmond and Sarah Richmond." The consideration was expressed, in the deed, to be 750,00. Warren Richmond thereupon came with his family into the dwelling house on the premises, and occupied and cultivated the land,—Amaziah Richmond and Sarah, his wife, who were the father and mother of Warren Richmond, continuing in the same house and living and taking their food with Warren and his family, until the decease of Amaziah Richmond, and Warren doing all the business in relation to the management of the farm and supporting Amaziah Richmond and his wife. On the ninth day of November, 1842, Warren Richmond, having occasion to raise money, for that purpose mortgaged the premises to Timothy H. Hall ; and the mortgage debt having become due, Hall obtained a decree of foreclosure, which became absolute in 1844 ; and on the twenty third day of March, 1844, Hall assigned and conveyed all his interest in the mortgaged premises and decree of foreclosure to the present plaintiff. On the tenth day of January, 1843, the Bank of Bellows Falls caused all the right, title, interest, benefit, or claim and use of Amaziah Richmond in the premises to be attached at their suit, and at the May Term, 1843, of Windham county court judgment was rendered against Amaziah Richmond, in that suit, for $305,05 damages, and $7,86 costs, and

XXIII. 75*

execution was issued, which, after the decease of Amaziah Rich-
mond, was levied upon his estate in the premises, which was described
in the levy as the "undivided half of the annual rents, issues and profits
" thereof accruing and to accrue to him by virtue of a reservation in
" the said Amaziah Richmond's deed of the same premises to War-
" ren Richmond, dated February 21, 1831, of said undivided half of
" said rents, issues and profits during the life of the said Amaziah
" Richmond and his wife."    And the plaintiff being in possession of
the premises, the defendants entered upon him, claiming under the
said Sarah Richmond; and it was agreed, that if Sarah Richmond
then had title or right of entry in the premises, the defendants should
recover their costs; and otherwise judgment should be rendered for
the plaintiff for $8,00 damages and his cost.

The county court rendered judgment for the plaintiff. Excep-
tions by defendants.

*A. Keyes* for defendants.

1. Deeds are always to be construed according to the intent of
the parties, having special regard to what estate is intended to pass,
and to whom, without regard to the manner.  Shep. Touch. 82.  2
Saund. R. 96, n. 1.   3 Lev. 372.   4 Kent 473.   The evident in-
tent of the parties to this deed was, that Warren Richmond was to
have half the land in fee, and the other half after the decease of his
father and mother, and that the life estate carved out of that half was
intended as a provision for the father and mother during their joint
lives and the life of the survivor of them.   This intent the court will
carry into effect, if it can possibly be done consistent with the laws
of the state.

2. In one view of the case, Sarah Richmond may be entitled to
dower in that half.   If the clause in the deed must be considered
simply a reservation to Amaziah for the life of himself and wife,
then he died seized of an estate during the life of his wife; and if
he died *seized,* Sarah, his wife, is entitled to dower; Rev. St. 289;
and if entitled to dower, she had both " *title and right of entry.*"
Rev. St. 290, § 11.   In this view it would become important to
consider the validity of the levy of the Bank of Bellows Falls.   That
was a levy on the rents and profits and not on the life estate of Am-
aziah Richmond.   But here was no lease for life, or years, no rents

reserved, no tenant to attorn with rents, or to be turned out of possession upon refusal to pay rent. *Mattocks* v. *Stearns*, 9 Vt. 336. Rev. St. 243, §§ 33, 34. The levy, then, was void, and the widow may have dower.

3. But this conveyance, as to the half, was a *covenant to stand seized*, first, to the use of Amaziah for life, then to Sarah for her life, and after the decease of both to Warren in fee. If the court are satisfied as to the intent of the parties, and find that the deed cannot operate in the mode supposed by them, the court will adopt some other mode, if possible, to carry into effect that intention. Hence a *grant* may amount to a grant, gift, feoffment, lease, release, confirmation, or surrender. Co. Lit. 301 *b*. A grant of rent, without attornment, will amount to a covenant to stand seized. 3 Lev. 372. A grant without livery may so operate. Ib. A bargain and sale without consideration may, from the relationship of the parties, so operate. 1 Ventr. 137. Bargain and sale without enrolment also. 3 Lev. 291. 2 Saund. R. 97, n. 4. A conveyance with but one witness, the statute requiring two, if there be a consideration of blood, or marriage, will operate as a covenant to stand seized. *French* v. *French*, 3 N. H. 234. Conveyances in form of a grant, feoffment, or release, and void as such, may operate as a covenant to stand seized. 2 Saund. on Uses 80. Here the bargainee and *cestui que use* were both within the family relation, and a use may be raised to any person within the consideration. Ib. Marriage, as well as blood, is a good consideration to raise a use, and a husband may well convey to the use of his wife, or covenant to stand seized to her use. 1 Co. Lit. 112 *a*. 3 Ib. 3 *a*, n. 12 ; 271 *b*, n. 231. 1 Saund. on Uses 95, 130, 224. 4 Co. 29. *Bryan* v. *Bradley*, 16 Conn. 474. *Jackson* v. *Swart*, 20 Johns. 85. *Milbourne* v. *Simpson*, 2 Wils. 23. *Emery* v. *Chase*, 5 Greenl. 232. True, the marriage or blood relation does not appear from the deed, and money only is there named as the consideration, but the relationship of the parties may be averred and proved, and when proved is presumed to be a part of the consideration. 2 Saund. R. 97 *b*, n. *Wallis* v. *Wallis*, 4 Mass. 135. *French* v. *French*, 3 N. H. 234. *Rogers* v. *Eagle F. Co.*, 9 Wend. 611. *Doe* v. *Sherlock et al.*, Smith's R. 79. *Wood* v. *Beach*, 7 Vt. 522. *Gale* v. *Coburn*, 18 Pick. 397. *Brewer* v. *Hardy*, 22 Ib. 376. 2 Saund. on Us. 82. 2 Bac. Abr. 8. *Hay-*

*den* v. *Muntzer*, 10 S. & R. 329. 1 Shep. 233. 7 Greenl. 175. It is evident, that Amaziah Richmond intended his wife should have the *possession*, as well as use ; and by statute of Henry 8 the possession and legal estate is annexed to the use, and makes in Sarah Richmond an absolute estate for life and the right of possessing the same.

4. If, however, we are limited by the consideration named in the deed, this conveyance may well be considered a *feoffment* to uses,— a feoffment to Warren, for the use of Amaziah and wife for life, then to the use of the survivor for life, remainder to Warren forever ; and here a money consideration is sufficient. 4 Kent 274. *Emery* v. *Chase*, 5 Greenl. 232. *Bryan* v. *Bradley*, 16 Conn. 474. *Rogers* v. *Eagle Fire Co.*, 9 Wend. 611. *Marshall* v. *Fisk*, 6 Mass. 32. *Thatcher* v. *Omans*, 3 Pick. 521. *Dutch Church* v. *Veeder*, 4 Wend. 494. *Durant* v. *Ritchie*, 4 Mason 45. And in this view the statute would annex the estate to the use.

5. But it is objected, that the statute of uses is not in force here. Chancellor Kent says, " The English doctrine of uses and trusts under the statute of 27 Henry 8, and the conveyances founded thereon, have been very generally introduced into the jurisprudence of this country." 4 Kent. 299. It has been adopted in New Hampshire ; *Chamberlain* v. *Craine*, 1 N. H. 64 ; *Exeter Bank* v. *Odiorne*, Ib. 237 ; *French* v. *French*, 3 Ib. 234 ; in Connecticut ; *Barrett* v. *French*, 1 Conn. 354 ; *Bryan* v. *Bradley*, 16 Ib. 474 ; in Massachusetts ; *Wallis* v. *Wallis*, 4 Mass. 135 ; *Marshall* v. *Fisk*, 6 Ib. 31 ; *Parker* v. *Nichols*, 7 Pick. 111 ; *Gale* v. *Coburn*, 18 Ib. 397 ; *Brewer* v. *Hardy*, 22 Ib. 376 ; in New York ; 10 Johns. 456 ; 11 Ib. 357 ; 16 Ib. 515 ; 20 Ib. 85 ; 1 Cow. 622 ; 4 Ib. 427 ; 9 Wend. 641 ; 21 Ib. 147 ; in Pennsylvania ; 1 Binn. 518 ; 3 Ib. 619 ; 4 Ib. 1 ; in Maryland ; *Matthews* v. *Ward*, 10 Gill. & Johns. 443 ; in South Carolina ; *Laurens* v. *Jenny*, 1 Speers 356 ; in North Carolina ; 1 Hayw. 250, 259 ; 4 Ib. 229 ; and in Virginia ; *Curtis* v. *Fitzhugh*, Jeff. 72. Our ancestors brought from England the common and statute law, and particularly the different modes of conveyancing. That common and statute law became our common law, and this from necessity. *Marshall* v. *Fisk*, 6 Mass. 31. *Commonwealth*, v. *Churchill*, 2 Met. 118. The pioneers of this state, coming from Massachusetts and Connecticut, had already, in prac-

tice, adopted the same as their common law. Hence, in their early attempts at legislation, in 1782, they use the following language,— "An act adopting the common and statute law of England. Whereas the inhabitants of this state have been habituated to conform their manners to the English laws and *hold their real estate by English tenures*, Be it enacted," &c.,—adopting the common law. And farther,—"Whereas the statute law of England is so connected and interwoven with the common law, that our jurisprudence would be incomplete without it, therefore be it farther enacted," &c.,—adopting the English statutes passed before October, 1760, so far as applicable, and not repugnant to our constitution and statute laws. Slade's State Papers 450. That the statute of uses was one of the English statutes adopted by the statute of 1782 is apparent from the preamble. If it be objected, that our statute of conveyances of 1797, in force at the time of the making of this deed, was a complete system of conveyancing and did away all the English modes of transfer, we answer, that the fifth section of that statute is a literal copy of the act of 1779, upon the same subject, which provided for enrolment and dispensed with livery of seisin. The statutes of 1779 and 1797 recognized the statute of uses by adopting bargain and sale, which, as a legal conveyance, is peculiarly a creature of that statute. The fifth section of the statute of 1797 enacts, that all deeds executed in a certain way shall be good, but contains no negatives upon other conveyances. It is a rule, in the construction of statutes, that affirmative words do not take away the common law, nor a former statute, unless it be in cases, where the affirmative words in sense contain a negative. *French* v. *French*, 3 N. H. 263. The statute of 1797 is almost a literal copy of the Massachusetts statute of 1783 on the same subject; and the courts there uniformly decide, that that statute did not in the least impair the validity of conveyances at common law, or those operating under the statute of uses. The statute of conveyances in New Hampshire is *verbatim* ours of 1797, and the courts there have uniformly held the same. The decision of the circuit court, sitting in this state, that the statute of Henry 8 was and always has been in force in this state, is entitled to great weight. *Williston* v. *White*, 11 Vt. 45. The use created by this deed was not a shifting, or springing, use, but a

*vested use,* raised at the instant the deed was executed. *Brewer* v. *Hardy,* 22 Pick. 376.

6. But if all common law conveyances and those operating under the statute of uses are done away by our statute of conveyances, it will follow, that the rules and principles peculiarly adapted to carry these conveyances into effect are also done away and can only be used to elucidate our own statute. In this view of the case, 1 should call this deed, in the language of our own statute, a deed of *bargain and sale ;* and as our statute recognizes uses and trusts, it is a bargain and sale to Warren Richmond, to the use of Amaziah Richmond and wife during their life and that of the survivor, together with the *possession* of the premises as expressed in the deed, or, which amounts to the same thing, a bargain and sale to Warren, upon condition that Amaziah and wife shall have the use and occupancy of the premises during their joint lives and that of the survivor. It cannot be objected, that a use cannot be raised upon a bargain and sale, because a use cannot be raised upon a use; for, by the supposition, the bargain and sale previous to and operating under the statute of uses is done away, and the bargain and sale of our statute is entirely a different conveyance. Neither can it be objected, that this would be to create a freehold to commence in future, which at common law cannot be; for, by the supposition, we are not under the common law, but our own statute. At common law deeds took effect from livery of seizin, and livery could not be made of a freehold to commence in future; but here deeds take effect, as between the parties, at the time of their execution, and between the parties and the public from the date of the recording. *Cessante ratione, cessat ipsa lex.*

*Walker & Kellogg* for plaintiff.

By the deed the entire premises are, in express terms, conveyed to Warren Richmond, his heirs and assigns forever; and subsequently there is an attempt to except from the operation of the conveyance the possession of one half of the premises during the life of Amaziah and Sarah Richmond.

1. Even if the exception were to take effect, Sarah Richmond cannot claim title by virtue thereof; for although the exception is

for her life, it could not be reserved to her, she being a stranger to the deed. *Hornbeck* v. *Westbrook*, 9 Johns. 74. *Moore* v. *Earl of Plymouth*, 5 B. & Ald. 66, [5 E. C. L. 232.] *Adams* v. *Dunklee*, 19 Vt. 382. Whatever was reserved, if any thing, was reserved to Amaziah Richmond, and Sarah Richmond could at the most have dower in the reserved premises. At common law the widow could not enter upon her dower, until it was assigned,—it being a mere right of action. 4 Kent 61. *Hildreth* v. *Thompson*, 16 Mass. 197. Our statute merely permits the widow to continue . to occupy the lands of the deceased with the children, until dower be assigned, *or* to receive one third of the rents and profits, but gives her no right of entry or title to the real estate. Rev. St., 290, § 11. 3 Bac. Abr. 194.

2. We claim, however, that by the deed the whole title passed to Warren Richmond, (under whom we claim,) and that the attempted reservation is void, as repugnant to the grant and subversive of it. Shep. Touch. 79, 112. 2 Dyer 155. 3 Ib. 264. 1 Vin. Abr. 128, 130, 131. 3 Com. Dig. 332–335. 3 Bac. Abr., Sale C. *German* v. *Orchord*, 1 Salk. 346. *Fish* v. *Sawyer*, 11 Conn. 552. *Youde* v. *Jones et al.*, 13 M. & W. 533. *Shed* v. *Shed*, 3 N. H. 432. Co. Lit. 206 *b*. 10 Co. 42. Moore 881. *Cutler* v. *Tufts*, 3 Pick. 277. Plowd. 152. *Ward* v. *Ward*, Martin's N. C. Rep. 28. Even if an estate to commence *in futuro* could be created by such a deed, yet the exception would still be repugnant to the grant, as the granting words convey the entire estate. But an estate to commence *in futuro* can only be created by a covenant to stand seized, and not by a bargain and sale. 2 Bl. Com. 165. 2 Bac. Abr. 6. *Tyrrel's Case*, 2 Dyer 155. *Youde* v. *Jones et al.*, 13 M. & W. 533. *Wallis* v. *Wallis*, 4 Mass. 135. *Pray* v. *Pierce*, 7 Ib. 384. *Welsh* v. *Foster et al.*, 12 Ib. 96. *Perkins* v. *Nichols*, 7 Pick. 115. *Gale* v. *Coburn*, 18 Ib. 339. *Brewer* v. *Hardy*, 22 Ib. 380. *Jackson* v. *Delancy*, 4 Cow. 427.

But this deed cannot be sustained, for want of the necessary consideration, blood, or marriage. The deed purports, upon its face, to be made solely upon a pecuniary consideration, and no other can be averred, or proved, as it would contradict the deed. *Bradley* v. *Bentley*, 8 Vt. 244. Although a consideration is necessary, to uphold a deed, yet it is not necessary, that it should be expressed; and

if no consideration be expressed, either a good or a valuable consideration may be proved, as this does not contradict, but supports, the deed. *Wood* v...*Beach*, 7 Vt. 522. 2 Stark. Ev. 549. *Davenport* v. *Mason*, 15 Mass. 92. But when a specific consideration is named in a deed, a consideration of a different character cannot be proved, as it would contradict the deed. 3 Phil. Ev., Cow. & H. Notes, 1442, 1451. Cruise's Dig., Tit. 32, c. 10, §§ 23, 24. Shep. Touch. 513. 2 Stark. Ev. 549. *Villers* v. *Beaumont*, 2 Dyer 146 *b.* 1 Greenl. Ev., § 285. *Clarkson* v. *Hanway*, 2 P. Wms. 204. *Peacock* v. *Monk*, 1 Ves. Sen. 128. *Hinds* v. *Longworth*, 11 Wheat. 199. *Jackson* v. *Delancy*, 4 Cow. 427. *Davenport* v. *Mason*, 15 Mass. 92. 16 Ohio 438. *Emery* v. *Chase*, 5 Greenl. 232. 2 Saund. on Us. 80, 81. *Chesson* v. *Pettijohn*, 6 Iredell 121. 1 McCord 514. *Bryan* v. *Bradley*, 16 Conn. 486. *Bird* v. *Smith*, 3 English 355. This deed cannot, therefore, operate as a covenant to stand seized. Therefore, even under the statute of uses, Amaziah Richmond did not take a life estate in these premises.

But we contend, that the statute of Henry 8, c. 10, is not in force in this state. 1. The State of Vermont commenced *ab integro*, and the laws of any other kingdom, or state, were never, *ex proprio vigore*, of authority in it. 2. The English statute of uses grew out of the constraints of the feudal law, which never had force here, and was adapted and applicable to very different local situations and circumstances, even if compatible with those of the neighboring states. Conn. Charter, p. 8. Colony Laws 107, 243. Mass. Charter. Co. Lit. 191 *a.* 2 Sul. Lect. 121. Williams' Real Prop. 16, 107. 2 Bl. Com. 311. 3. No argument in its favor here is to be drawn from the use of the words " bargain and sale " &c., in our statute; for such a conveyance existed before the English statute. See Dissertation of Judge Chipman, in his Reports, 1st Ed., p. 144. 2 Saund. on Us. 42. Cruise on Us. 66. 4. It was never necessary, from the foundation, as our statutes always made all *deeds*, having the prescribed requisites, sufficient for conveyance. Slade 336. Hasw. St. 32. St. of 1797. 5. The introduction, or allowance, of the English doctrine of uses would be inconvenient and attended with all the evils, mentioned in 4 Kent as having been experienced in New York. 6. Being no part of the common law, it could only be introduced by statute,—which has never been the case; for even the

Gorham *v.* Daniels et al.

statute of 1782 was soon repealed, as was the statute of 1787, neither of which was intended to include it. Slade 450. Hasw. St. 28. St. of 1797, p. 600. And no decisions of our own courts have sanctioned it. *Williston* v. *White*, 11 Vt. 45.

The opinion of the court* was delivered by

REDFIELD, J. This case has been twice argued, and mainly upon the question how far the statute of Henry VIII of England, called the statute of uses, is to be considered in force in this state. It seems to me very much to be regretted, that so important a question should have come to a final determination in a case so utterly insignificant in pecuniary consequence. But I have given my best attention to the subject, during the two arguments, and notwithstanding, it seems to be conceded, that the statute of uses is considered in force in most of the other American states, and would answer a good purpose, in many cases, in effecting, at law, the real intention of the parties, without the necessity of a resort to a court of equity, and the farther consideration, that it is known, that the late Mr. Justice THOMPSON, of the United States' Supreme Court, while presiding in the circuit court, in this state, upon argument, and after a deliberate consideration, in a written opinion of considerable labor, decided that it was in force here, still I cannot bring my mind to that conclusion. See 1 Greenleaf's Cruise 349, and the learned editor's elaborate note upon the subject, where the matter is fully discussed.

But so far as the conveyance of lands, in this state, is concerned, it seems to me, that our statutes are fully adequate to all the ordinary incidents of the subject, and that in those extraordinary occasions, where the statute of uses might answer a good end, it will be safer, and better every way, to have resort to a court of equity, than to introduce a portion of the ancient common law system of conveying real estate, most of the incidents of which having been materially modified, even in England, since the separation of this country from that, it would become necessary immediately to resort to very extensive legislation, in order to render this addition to our present laws even tolerable.

---

* KELLOGG, J., having been of counsel, did not sit upon the trial of the case.

This view is certainly confirmed by the history of our jurisprudence upon this subject. Nothing ever existed in the history of this state, calling, in the slightest degree, for the use of such a statute, except in those cases, where, by some mistake, the parties have failed fully to effect their intention in the prescribed mode. The statute of uses would no doubt aid somewhat this class of cases. But its original purpose and design had not the remotest bearing, or purpose, in that direction even. And to adopt a portion of a system of laws, which will in its train, very likely, draw in the whole, for the mere purpose of effecting some collateral purpose in a particular cause, seems almost absurd.

We entertain no doubt, that our system of conveyancing, so different from the English, so simple and intelligible to all, and so intended to be, by means of a thorough system of registry, from the very first, was designed to be entire in itself. And although most of its terms, and many of its forms of deeds even, like that of bargain and sale, derived their meaning and operation, to some extent, from the common law and the English statutes, and that of uses among others, yet it was no doubt the purpose of the framers of our laws upon conveyancing to have them "*understanded*" of the people, without the necessity of resorting to the study of the subject in other quarters. Such has been the practical construction of the subject by all, professional, or unprofessional, ever since. With rare exceptions, the profession in this state have never supposed any of the common law modes of conveyancing could be regarded as in force here. The attempt to bar an entail, in this state, by a common recovery, or the rights of a married woman, by a fine, would, I think, strike the profession with some surprise.

The late Chief Justice CHIPMAN, who knew more, perhaps, of the probable purpose of the legislature, in passing the statute of conveyancing, when first adopted, than any other man ever did, in his dissertation on this subject, published nearly contemporary with the first statute upon this subject, which formed the basis of all our subsequent legislation in regard to the matter, says in express terms, that our deed of bargain and sale did not derive its force from the statute of uses, but from the common law, and that "none of the statutes of Great Britain, as such, have any force in this state." Edition of 1793, pp. 145, 146. And from that time forward such has no doubt

been the general sense of the profession and of the people. And this court have often expressed similar opinions, and the whole course of our decisions upon this subject has been based upon this view. *Wheelock* v. *Moulton*, 15 Vt. 519. *Isham, Adm'r*, v. *Bennington Iron Co.*, 19 Vt. 230. The frequent resorts made to the court of chancery, from the earliest times, to perfect a conveyance of real estate, defectively executed, very strongly confirm this view. For if the statute of uses had really been in force in this state, from the first, it seems wonderful no one should have suggested the aid of that statute, in this class of cases.

In regard to the remainder of the case, the authority of *Adams* v. *Dunklee* seems to me decisive of the plaintiff's title, under the deed of Amaziah Richmond to Warren Richmond. The most, which could be made of that deed, is a reservation of an estate during the the life of the grantor and his wife. This would of course leave the estate in his personal representative after his decease. And the only right, which the widow could have, would be by way of dower. This, at common law, would give her no right of entry, until after the assignment of her interest therein. But in *Grant* v. *Parham*, 15 Vt. 649, it was considered, that the dowress, upon the decease of her husband, had a present vested estate, which she might convey. And in Connecticut it is considered the widow is a tenant in common with the heirs; and if the law is so to be regarded here, she has a good right of entry, whether as against a stranger, or her co-tenant. And by Revised Statutes, chap. 51, sec. 11, the widow has secured to her, in express terms, a concurrent right with the heirs. " She may continue to occupy the same with them." That is giving her the same right of occupancy with the heirs, and must of necessity extend to all cases of land, of which the husband died seized. The form of expression, " continue to occupy," has reference only to the connection kept up between the title of the dowress and the husband. I should therefore be inclined to think, that, as dowress, she had the same right of entry, which the husband had during his life.

The granting of an estate in fee, to take effect after a particular estate reserved, as an estate for life, or lives, is not inconsistent with the law of England. And if it were, it could have no application here; for under our statute of conveyancing, there being no livery

of seizin in fact necessary to invest the grantee with the title, but only the seizin resulting from the due execution and recording of the deed, there is no objection whatever to the creating of a freehold estate, in terms, to take effect in future. This has been expressly decided in some of the American states, and we see no valid objection to holding the same, under our statute.

NOTE BY REDFIELD, J. The point, upon which this case was finally determined by the court, not having been so much discussed by the counsel, as that in relation to the operation of the statute of uses in this state, some question might be made, whether the estate of the husband here was such, whereof the wife is entitled to dower. But it seemed to us, no reasonable doubt could be entertained upon that point. The statute of this state is very extensive, endowing the wife of all " real estate of which her husband died seized in his own right," the latter clause being intended to exclude trust estates doubtless. Now it could not, with any degree of fairness, be argued, that this was not an estate, of which the husband died seized in his own right, although intended for the benefit of another. That must include all estates, which descend to heirs. And although this reservation was doubtless intended for the benefit of the wife, yet in law it was the estate of the husband in his own right, and descendible to the heirs, as much as if its duration had been measured by the life of any other person.

This is substantially the principle of the rule of the common law, as to the estate of which the widow is dowable, notwithstanding the text writers have laid down the rule in more limited terms. For instance, in 2 Bl. Com. 131, it is said, she is endowable of all lands, of which the husband was seized " in fee simple, or fee tail." And in 1 Greenleaf's Cruise 152 the rule is laid down much in the same terms, upon the authority of Littleton, sec. 36; but this is merely the English statute. But the *principle* of the right of dower at common law seems to have been based upon the wife being of such age, that she might by possibility have children, which could inherit the estate of the husband. Litt., sec. 53, 40 *a* 1 Co. Litt. 578, (Thomas' Arrangement.) So that, if the estate were limited in tail to the issue of another *venter*, or if the wife did not attain the age of nine years, or if the wife were an alien, in all these cases she was not entitled to dower. And by parity of reason, if the estate were inheritable by the wife's issue, although less than a fee simple, the wife should be endowable ; and the statute in this state has so defined her right of dower, in all estates of which the husband *died seized.*

I have spoken of dower in one third of the husband's real estate of inheritance, as a common law right, which strictly it is not. That is now fixed by a succession of English statutes, and in that country extends to all the dowable estate, of which the husband was seized during the coverture. At common law the husband might endow his wife of such portion of his estate, as the terms of the marriage contract required, and this was done before the priest, as a part of the marriage service, as the ritual of the English church still indicates,—" Of all my worldly

Curtis *v.* Vt. Central Rail Road Co.

goods I thee endow,"—which is now regarded as of no other significance, than to give the wife, in form, what she is in law entitled to claim,—a maintenance out of his property, during life; but formerly it was essential to the wife's rights. The incidents attending the estate of dower in the English law, before *Magna Charta*, are rather matters of curious speculation to the learned antiquary, than of any practical value towards a correct understanding of the subject, here or in England, where it has for many centuries been dependent exclusively upon statutes, and which has always been the case in the American states.