PIERPOINT ISHAM, Administrator of FRANCIS DEPEAU, v. THE BENNINGTON IRON COMPANY, CHARLES H. HAMMOND, NATHAN LEAVENWORTH, DUNCAN P. CAMPBELL, JOHN V. FASSETT, DANIEL ROBINSON, LE ROY MOWREY, WILLIAM NOYES, BILLINGS P. LEARNED, EBENEZER PROUDFIT, JACOB L. VAN SCHOONHOVEN, WILLIAM H. WARREN, ISAAC B. HART, GEORGE LESLEY, DAVID T. VAIL, JOEL MALLORY, EZRA T. DOUGHTY, BENJAMIN HATCH, JOSEPH M. WARREN, STEPHEN PRATT, AUSTIN HARMON AND BENJAMIN F. FAY.

[IN CHANCERY.]

The registry of a defective deed is no notice of title to any one.

To entitle a deed to registration, it must be executed according to the *statute* requisites, by which the registry of deeds is established ;—it is not sufficient, that it is executed merely according to the requirements of the common law.

All statutes, in regard to the same subject matter, are to be construed together, as parts of one system.

Later and more specific statutes, as a general rule, supersede former and more general statutes, so far as the new and more specific provisions go.

Isham, Adm'r, v. Bennington Iron Co. et al.

The statute of Nov. 3, 1815, which provided that private corporations might, by their vote, authorize their president to convey real estate belonging to them, and that the deed of such president, reciting the vote of the corporation thereunto authorizing him, and being duly executed, acknowledged and recorded, should be sufficient to pass the title, was designed to and did, so far as corporations were concerned, supersede the statute of March 6, 1797, in reference to conveyances of real estate; and the mode mentioned in the statute of 1815 was intended to be the *uniform* and the *only* mode of conveying land by corporations. DAVIS, J., dissenting.

The essence of the requisition of the statute of 1815 is, that the deed must be executed in pursuance of *some vote of the corporation*, and that this vote must be *recited* in the deed.

But, even under the statute of 1797, where a deed, which professed to be the deed of a corporation, was signed by a person, who described himself, in his signature, as "chairman" of the corporation, and no vote, authorizing him to sign the deed, was recited, and the records of the corporation showed no such vote, it was held, that no sufficient evidence of the consent of the corporation to the deed was shown, notwithstanding all the individual corporators were parties to the deed, and executed it, for the purpose of conveying, by the same deed, all the shares in the capital stock of the corporation;—and it is not sufficient, that the corporators *now* say they consented to the execution of the deed by the chairman, on behalf of the corporation.

So, under that provision of the statute of 1797, which required that deeds of land should be "*signed* and sealed," it was held that a deed, purporting to be the deed of a private corporation, called "The Bennington Iron Company," and which was signed "Charles H. Hammond, Chairman Bennington Iron Co.," was not sufficiently *signed*, to render it a valid deed. It was necessary, under that statute, that the *name* of the grantor should be *subscribed* to the deed, in order to designate it as his deed.

And it is not sufficient, to supply this defect, that the deed is sealed with the corporation seal. *Sealing*, in case of a corporation, does not import *signing*, nor obviate the necessity of having the *name* of the corporation subscribed to the deed.

And where such deed was signed by one as "chairman" of the corporation, and he affixed to the deed the corporation seal, and there was also annexed to the deed a certificate of the oath of the chairman, that the seal so affixed was the seal of the corporation, and that it was affixed by their authority, it was held, that this was no sufficient *acknowledgment*, under the statute of 1797.

APPEAL from the court of chancery. This was a bill of foreclos-
ure, and the orator's claim was founded upon a tripartite indenture
of bargain and sale, between The Bennington Iron Company, of the
first part, the defendants Hammond, Leavenworth and Campbell, of
the second part, and the orator's intestate, of the third part, purport-
ing to be executed for the purpose of securing a debt due from the
corporation to the intestate of twenty thousand dollars, and to bear
date May 12, 1827. The bill was taken as confessed as to the cor-
poration. The defendant Hammond answered, admitting, in sub-
stance, the allegations in the bill. It appeared, that the other de-
fendants, except Leavenworth and Campbell, had either purchased
from the corporation, for valuable consideration, subsequent to the
date of the indenture relied upon by the orator, some portion of the
real estate described in the indenture, and had caused their deeds to
be duly recorded, or that they were creditors of the corporation, and
had attached the real estate described in the indenture, subsequent
to its date, as the property of the corporation, and had perfected
their liens by judgment, execution and levy ;—and these defendants
answered, setting forth their respective titles, and insisting, that the
indenture relied upon by the orator was not duly executed as the
deed of the corporation, nor as the deed of Charles H. Hammond,
chairman of the corporation, and that it was wholly inoperative and
void, as a mortgage, as against these defendants. These answers
were traversed, and testimony was taken upon both sides.

Those parts of the indenture relied upon by the orator, and the cer-
tificates appended thereto, which need be recited, were as follows ;—

"This Indenture, made the 12th day of May, A. D. 1827, between
'The Bennington Iron Company, of the first part, Charles Henry
'Hammond, of Bennington in the county of Bennington and State
'of Vermont, Nathan Leavenworth, of the same place, and Duncan
'P. Campbell, of the city of New York in the State of New York,
'of the second part, and Francis Depeau, of the said city of New
'York, of the third part : Whereas the said parties of the first part,
'by a certain act of legislature of the state of Vermont, passed on
'the 14th day of November, A. D. 1826, are duly constituted a body
'politic and corporate, as by reference thereto may fully appear;
'and whereas the said parties of the second part are the only stock-
'holders and solely interested in the capital stock of the said parties
'of the first part; and whereas the said parties of the first and second
'parts are justly indebted to the said party of the third part in the

Isham, Adm'r, *v.* Bennington Iron Co. et al.

'sum of twenty thousand dollars, lawful money of the United States
'of America, secured to be paid by their certain joint and several
'bond, or obligation, bearing even date with these presents, in
'the penal sum of forty thousand dollars, lawful money, as afore-
'said, conditioned for the payment of the said sum of twenty thous-
'and dollars on the 12th day of May, A. D. 1829, and the lawful
'interest thereon, to be computed from the day of the date of the
'said bond, or obligation, and to be paid semi-annually, or half
'yearly, without any fraud, or other delay,—as by the said bond, or
'obligation, and the condition thereof, reference being thereunto
'had, may more fully appear;—Now, therefore, this indenture wit-
'nesseth, that the said parties of the first part, for the better securing
'the payment of the said sum of money mentioned in the condition
'of the said bond, or obligation, with interest thereon, according
'to the true intent and meaning thereof, as also for and in consider-
'ation of the sum of one dollar, to them in hand paid, by the said
'party of the third part, at or before the ensealing and delivery of
'these presents, the receipt whereof is hereby acknowledged, have
'granted, &c.;' (*describing the real estate of the corporation;*) 'And
'this indenture farther witnesseth, that the said parties of the second
'part, for the better securing the payment of the said sum of money
'mentioned in the condition of the said bond, or obligation, with in-
'terest thereon, according to the true intent and meaning thereof,
'and also for and in consideration of the sum of one dollar, to them
'in hand paid, by the said party of the third part, at or before the
'ensealing and delivery of these presents, the receipt whereof is
'hereby acknowledged, have severally granted,' &c., 'and by these
'presents do severally grant,' &c., 'unto the said party of the third
'part, and to his executors,' &c., 'all and singular the shares of them,
'the said parties of the second part, and of each of them, and all
'other their respective rights, titles, interests, claims, property and
'demand whatsoever, both at law and in equity, of and to the capital
'stock and other property of the said parties of the first part above
'mentioned and described. To have and to hold,' &c. 'Provided,
'nevertheless,' &c. [*being a condition of defeasance, in case of pay-
'ment of the amount secured by the bond; also covenants, by the par-
'ties of the first and second parts, that they would pay that amount,
'and that they would keep the premises insured* ] 'In witness where-
'of the said parties of the first part have hereto set their seal of in-
'corporation, and the said parties of the second and third parts have
'hereto set their respective hands and seals interchangeably, the day
'and year first above written.

| 'Sealed and delivered | C. H. HAMMOND, Chairman | [Seal.] |
| 'in the presence of | Bennington Iron Co. | |
| 'Ab'm Ogden, Jr., | C. H. HAMMOND, | [Seal.] |
| ''J. S. Huggins, | N. LEAVENWORTH, | [Seal.] |
| | D. P. CAMPBELL." | [Seal.] |

30

" City and County of New York. On the 12th day of May, A.
'D. 1827, before me personally came Charles H. Hammond, Nathan
'Leavenworth and Duncan P. Campbell, whom I know to be the
'same persons described in and who executed the above deed, and
'severally acknowledged the said above deed to be their respective
'act and deed. And I do farther certify, that on the same day
'Charles H. Hammond, whom I know to be the same person who is
'chairman of the corporation styled "The Bennington Iron Com-
"pany," and who, as such chairman, has subscribed the said above
'deed, personally appeared before me, and, being duly sworn, did
'depose and say, that the seal affixed to the said above deed is the
'corporate seal of the said corporation, and that the same was so
'thereto affixed by and under their authority.

Abr'm Ogden, Jr., Commis'r of deeds."

" Recorded, July 25, A. D. 1827, Book 13, pages 21 to 28 in-
' clusive.    William Haswell, Town Clerk, Bennington, Vt."

Testimony was taken on the part of the orator, tending to prove
that this mortgage was well executed and acknowledged according
to the laws of the State of New York. It appeared, that the defend-
ants Hammond, Leavenworth and Campbell were in fact owners of
all the capital stock of the Bennington Iron Company, at the time
the mortgage was executed. Copies of the records of the corpora-
tion were produced ; but no vote was found recorded authorizing
the execution of the deed in question ; but it appeared that the cor-
poration had paid the interest upon the bond semi-annually from its
date until November, 1841, and that it was mentioned each year,
under the title of " mortgage account," in the statement of the affairs
of the corporation which was placed upon their book of records.
It also appeared, that the seal affixed to the deed against the signa-
ture of Hammond, as chairman, was the seal of the corporation,
which was kept in the custody of its officers. The other matters in
testimony in the case are sufficiently detailed in the opinion of the
court.

Such of the defendants. as were attaching creditors also filed a
cross bill ; but as no questions of law were decided upon it, its pur-
port, and that of the proceedings under it, need not be stated.

The court of chancery decreed, that the defendants should pay to
the orator the amount due upon the bond and mortgage, with inter-
est and costs, amounting in all to the sum of $24,967,76, by a time

specified, or be foreclosed of all equity of redemption in the premises; the court also dismissed the cross bill, with costs. From this decree the defendants appealed.

*Isham & Southworth* for orator.

I. The deed in question is well executed, under the statute of 1797. The requisites of a deed of bargain and sale under the English laws are required by this statute, with some others superadded; and—

1. There must be proper *parties* to the deed,—a grantor capable of conveying, and a grantee capable of holding. The party conveying, in this case, is the Bennington Iron Co., duly incorporated, with power to hold and convey real estate and have a common seal.

2. The deed must be *signed* and *sealed* by the grantor. The deed in question has affixed thereto the seal of the corporation. It is so stated to be in the acknowldgment, and on the face of the deed itself, and is proved to be such by the answers and testimony in the case. The deed also contains the signature of C. H. Hammond, as chairman and head officer of the corporation, opposite the seal. This, so far as *signing and sealing* is concerned, is all that can be done, where the act is that of a corporation and the deed is executed in the name of the corporation itself.

At common law the signature of a corporation was made by affixing its corporate seal. Sugd. Vendors, 501, 502. *Cutler et al.* v. *Hogg*, 1 N. R. 306. And such was the rule adopted in the following cases, where the corporate seal was affixed to the deed with the signature of the president, in the same manner as it is affixed to the deed in question. *Jackson ex d. Donally* v. *Walsh*, 3 Johns. 226. *Lovett* v. *The Steam Saw Mill Association*, 6 Paige 56. *Gordon* v. *Preston*, 1 Watts 387. *Beckwith* v. *Windsor M. Co.*, 14 Conn. 594. *Derby Canal Co.* v. *Wilmot*, 9 East 360. Affixing the *seal* of a corporation, *alone*, without the signature of a person authorized to affix it, has been held to be a compliance with the statute requiring *signing and sealing*. 3 Johns. 226. 15 Wend. 258. The statute of frauds requires a contract to be *signed* by the party to be charged. The seal of a corporation has been held to be, and necessarily must be, a *signing*, within the statute. YATES, J., in 19

Johns. 549.   21 Pick. 419.   *E. L. Water Works Co.* v. *Bailey*, 4 Bing. 283.

It is claimed, however, that, in order to give this effect to the seal of the corporation, it should appear that it was affixed under their authority,—and that no evidence of such authority exists in this case.   But it is believed, that none of the defendants can legally deny the authority under which the seal was affixed.   If there had been a want of authority originally, the acts of *adoption* and *ratification* by the corporation would render the deed good, as against the mortgagors and judgment creditors, and estop them from denying it.   *Gordon* v. *Preston*, 1 Watts 385.   2 Met. 167.   *Skinner* v. *Dayton*, 19 Johns. 543.   Hosmer, J., in 2 Conn. 254.   *N. E. Insurance Co.* v. *De Wolf*, 8 Pick. 63.   Ang. & Am. on Corp. 178.

But the assent of the corporation and the authority of Hammond to affix the seal to the deed is not only stated and certified in the acknowldgement, but it is a fact which the *law presumes ;* this presumption may not be conclusive, but it casts the " *onus probandi* " on the defendants, to show an *entire* want of authority.   3 Phil. Ev., Cow. & H. Notes, 1062, 1286.   1 Ib. 386.   6 Paige 60.   22 E. C. L. 271.   24 Ib. 67.   Ang. & Am. on Corp. 159.

This authority is proved, also, by the *actual presence* of *every stockholder, director,* and *person* interested in the corporation, at the time of affixing the seal,—and assembled for the very purpose of executing this deed.   That, at such a meeting of the corporators, they may transact business relative to their corporate interests is very evident, even in case of *municipal corporations.*   Wilc. on Corp. 26, §§ 79, 82.   *Rex* v. *Theodorick*, 8 East 546.   Under such circumstances deeds have been executed, and sustained ; and it is believed not one case can be found, where such a deed has been held inoperative.   *Derby Canal Co.* v. *Wilmot*, 9 East 360.   *Jackson ex d. Donally* v. *Walsh*, 3 Johns. 226.   14 Conn. 596.   1 Watts 385.

But it is said, that our statute, requiring corporations to keep records, renders necessary the production of a *vote*, to show such authority.   Independent of this statute, it has been repeatedly held, that, in proving the assent of a corporation, or their delegation of authority, the same kind of proof is admissible, as would be, in the case of natural persons.   Story, J., in 6 Pet. Cond. R. 445, 446.   Parker, J., in 1 Pick. 304, 308.   1 Watts 387.   3 Johns. 226.   2 Met. 167.

9 East 360.   14 Conn. 596.   This rule of evidence is not altered by that statute.   The records, when properly authenticated, would be evidence in any proceedings against the corporation, but are not evidence against third persons, or even one of their own number, when prosecuting as creditor.   *Hill* v. *M. & S. Water Works Co.*, 27 E. C. L. 220.   The statute is directory, and an omission to make the required record does not render the proceedings void, but only renders the party guilty of the neglect liable to a prosecution therefor.   *Bank of U. States* v. *Dandridge*, 6 Pet. Cond. R. 446. 9 Mass. 312.   8 B. & C. 29.   3 Pick. 335.   14 Mass. 167.   1 Phil. Ev. 409.   6 Vt. 315.   11 Vt. 307.

3. The statute farther requires, that the deed be *acknowledged*. No particular *form* is required ; and it is sufficient, if the certificate show on its face what acts were done, and a compliance with every substantial requirement of the statute.   1 Hopk. Ch. R. 239.   12 Ohio R. 377.   The deed in question is well acknowledged, under our statute of 1797 ; for it contains the statement, and official certificate,—1, That Hammond was chairman of the corporation, and, as such, subscribed his name with that of the corporation ;—2, That the seal affixed to the deed was the seal of the corporation ;—3, That the same was affixed thereto by and under their authority.   Hammond was the proper person to make the acknowledgment ; he was authorized to affix the seal, and it would be inconsistent to say that he could not acknowledge it.   *Bank of England* v. *Chambers*, 31 E. C. L. 99.   *Gordon* v. *Preston*, 1 Watts 385.

II.   Did the statute of Nov. 3, 1815,—providing that private corporations may, by their vote, authorize their president to convey, &c., and that the deed of such president, reciting the vote, shall be sufficient to pass the estate,—*repeal*, or *modify*, the provisions of the statute of 1797, so far as corporations are concerned, so that they cannot execute their conveyances under the statute of 1797?   It is believed, that this statute only provides an *additional mode* of conveyance,—leaving it optional with *corporations* to execute their conveyances under the statute of 1815, or that of 1797.

In the construction of statutes we are to consider the " old law, the mischief and the remedy," and give such a construction as shall correct the mischief and provide a remedy.   The old law was the statute of 1797, and all conveyances under that statute were to be

by affixing a corporate seal. To give corporations a more simple form of conveyance, and to enable them to convey, where no provisions for a corporate seal had been made, was the object of the statute ;—hence the provisions of the statute of 1815, for passing a vote and reciting the same in the deed, and providing that the deed of the president should be sufficient,—thus providing a mode of conveyance for those corporations which have no common seal, and which could not execute their conveyances under the statute of 1797, and leaving those corporations, which have a common seal, and which could have executed their conveyances under the statute of 1797, to adopt the provisions of either, at their discretion. This construction is favored by the previous legislation of this state.

That a discretionary right, or power, was intended to be given is made apparent from the language of the statute itself, in the use of the word " *may.*" This word is used, where a discretionary power is given, and, in a statute, is always so to be construed, unless a duty is to be performed for the *public benefit*, or in furtherance of *public justice. Malcom* v. *Rogers*, 5 Cow. 188. 2 Chit. 251. 5 Johns. Ch. R. 112. 1 Pet. R. 46. So where a party has a remedy by statute, or common law, and a statute is passed giving another, the party has his election to adopt either. As effect can be given to both, one shall not be a repeal of the other by implication,—" for the law does not favor repeals by implication." Dwar. on St. 637, 638. 14 Wend. 250. 2 Caine 169. 1 Saund. R. 38, n. 2. 5 Cow. 165. 10 Pick. 383.

The statute of 1797 is not expressly repealed by the statute of 1815, and it will not be a repeal, unless such was the intention of the legislature, to be found by the application of certain and definite rules of law. 1. This intention to repeal cannot be found, unless it is expressed in *clear* and *explicit* terms. Dwar. on St. 717. 10 Rep. 138 *b.* 2. When both statutes are affirmative, an intention in the one to repeal, or modify, the other, can never be found, without *negative words*, showing such intention, or unless there is such a repugnancy in them, that the provisions of one cannot be adopted, without the positive violation of the other. 3 Howard 636. Broom's Legal Max. 12. Dwar. on St. 639, 674. 3. If a subsequent statute can be reconciled with a former, and both have effect, the latter shall not repeal, or modify, the former. Dwar. on St. 674. 15 Wend. 258. 6 Bac. Abr. 373 B, 377 G.

Isham, Adm'r, *v.* Bennington Iron Co. et al.

But the repeal of the statute of 1797 by that of 1815 is urged, on the ground that an affirmative statute, " *introductive of a new law*," implies a negative. But in this case the statute does not give a new right, but simply a new method, by which a previous right may be exercised. The maxim " *Leges posteriores priores contrarias abrogant*" is urged as a principle, under which the statute of 1797 is repealed by that of 1815. But it is under the application of this very maxim, that it has been held, that affirmative statutes shall not repeal a prior statute, without the use of negative words, or unless there be a positive repugnancy between them. If these do not exist, the later statute is auxiliary, and gives a discretionary right to adopt the provisions of either. Broom's Legal Max. 12. It is farther said, that, as the charter of the corporation does not direct how their conveyances are to be made, they are to be governed by the general law, and that the statute of 1815 is to be construed, as if incorporated in the charter. But the very question is, what is the general law? While the defendants claim it to be the statute of 1815, we claim it to be the statute of 1815 with that of 1797.

*John S. Robinson* and *Hiland Hall* for defendants.

I. A deed executed in one state, conveying land lying in another, must be executed with all the formalities and in the manner required by the *lex loci rei sitæ. United States* v. *Crosby*, 7 Cranch 115; 2 Cond. R. 437. *McCormick* v. *Sullivant*, 10 Wheat. 192; 6 Cond. R. 71.

II. This mortgage was executed while the statute of 1815, [Sl. St. 160, § 3,] was in force, and is defective in three statute requisites.

1. It is not the deed of the president; *Warner v. Mower*, 11 Vt. 385 ; it purports and was intended to be drawn and executed as the deed of the corporation ; it is, to be sure, signed by the president ; but the signature of a person to a deed, who, in the body, or granting part, evinces no intention to be bound, is inoperative. *Catlin* v. *Ware*, 9 Mass. 218. 7 Mass. 26. 13 Mass. 223.

2. No vote of the corporation is recited in the deed, authorizing the conveyance. The vote, like a power of attorney, is the evidence of the authority by which the deed is executed ; and a purchaser is not bound to look beyond the deed on record for it.

3. The mortgage is sealed with the corporate seal, and not with the individual seal of the president. It is true, it bears the seal, signature and acknowledgment of Hammond; but it was thus executed by him in his individual capacity, for the purpose of conveying his interest in the capital stock of the corporation.

III. The question, then, is, whether section three of the statute of 1815 is inoperative, so as to preclude a conveyance by corporations in any other manner, than that there prescribed.

1. The statute of 1815 is to be considered as a general provision for the government of all corporations thereafter created; and the charter of The Bennington Iron Co. must be understood as referring to it; and the third section, relative to conveyances, and the ninth section, relative to the keeping of records, are to receive the same construction, as if incorporated into the charter. Such a provision in the charter would have been inoperative and exclusive. Ang. & Am. on Corp. 188, 229. *Head* v. *Amory,* 2 Cranch 166. *Ontario Bank* v. *Bunnell,* 10 Wend. 186, 194. *M'Cartee* v. *Orphan Asylum,* 9 Cow. 507. And in *Wheelock* v. *Moulton,* 15 Vt. 521, this very question was decided.

2. The fifth and ninth sections of the statute of 1797 do not embrace corporations;—1, They relate only to such deeds as require *signature* by a grantor, who can acknowledge, and this a corporation aggregate cannot do;—2, The whole law relating to acknowledgment *requires* that it be done *in person,* and cannot apply to a corporation aggregate. 5 Cruise Dig. 99, § 51. Co. Lit. 67 *a.* 6 Vt. 121. 2 Mass. 37. 16 Johns. 5. 10 Vt. 241. 15 S. & R. 176. Ang. & Am. on Corp. 339. And the following cases do not contravene the principle of the cases before cited, that a corporation is not included in the provisions of a statute, which requires an act to be done in person. *United States* v. *Amedy,* 11 Wheat. 392; 6 Cond. R. 362. *Ontario Bank* v. *Bunnell,* 10 Wend. 186. *Rex* v. *Gardner,* Cowp. 79. 2 Plowd. 536. *People* v. *Utica Ins. Co.,* 15 Johns. 382. 5 Cruise Dig. 200. Ang. & Am. on Corp. 195, 196. The conclusion to be deduced from these cases is, that a corporation, prior to 1815, unless special provision was made in the charter, could only execute a deed as at common law, which must stand upon common law proof. *Jackson ex d. Donally* v. *Walsh,* 3 Johns. 226. This view is supported by the fact, that the fifth section of the stat-

Isham, Adm'r, *v.* Bennington Iron Co. et al.

ute of 1797 is almost a literal transcript of the statute of 1779,—when it can hardly be supposed the legislature were enacting a law for corporations, in anticipation of their future existence. Besides, it is an historical fact, that, prior to 1815, corporate privileges had been granted to few, if any, other than literary institutions and turnpike companies. In respect to land held by The Vermont State Bank, special provision was made in the charter; 2 Tol. St. 76, § 10; Acts of 1817, p. 17.; and turnpike companies were authorized to convey *in the manner provided by their by-laws.* Acts of 1803, p. 70. Acts of 1805, p. 153. Acts of 1807, p. 133. Acts of 1808, p. 162. Acts of 1811, p. 120. Acts of 1813, p. 191. Acts of 1814, p. 91. In 1815 six turnpike charters were granted, all of which omit the above provision, and refer, for the government of the corporations, to the general law. Acts of 1815, pp. 57, 76, 79, 97, 111, 143, 146, 156, 172. This shows, that the legislature did not consider that these corporations could convey, under the statute of 1797.

3. The statute of 1815 is affirmative, and introductive of a new law. In such a statute the word "*may*" is equally imperative with the word "*shall.*" 6 Bac. Abr. 377. 1 Sw. Dig. 13. But if corporations could execute a deed under the statute of 1797, did the statute of 1815 introduce a new law? Under the former statute the deed must be that of the corporation,—and under the latter that of the president. Under the ninth section of the statute of 1797, an authority to execute a deed must be delegated by power of attorney, signed, sealed and acknowledged. Under the statute of 1815 the vote of the corporation not only conferred on the president an authority to convey, but vested in him "a special right in the fee for the purpose of the conveyance." But if the ninth section of the statute of 1797 is held to apply only to natural persons, then we have no statute prescribing the mode in which the authority should be delegated, unless the statute of 1815 is imperative; and in such a case the rule is, when corporations have no specific mode of acting, the common law mode may be properly inferred. 2 Kent 290. *Fleckner* v. *Bank of United States,* 8 Wheat. 338. By the common law such authority must always have been conferred by deed. 13 Petersd. Ab. 506 n. 5 East 239. 12 Mod. 584. 1 Rol. Ab. 514. 2 Plowd. 535. Therefore the statute of 1815 did introduce a new

31

law ; and to attain the true construction of this act, we must consider the old law, the mischief and the remedy.   The common law required the agent to be empowered by deed, but did not require the deed and power to be acknowledged and recorded.   The statute of 1815 was passed to remedy both of these defects, and to carry out the recording system, which requires the written evidence of title to real estate to be placed upon record, for the information of the public.   This is decisive of the intention of the legislature, that the statute of 1815 should be imperative.   *Malcomb* v. *Rogers,* 5 Cow. 188.   *Rex* v. *Barlow,* 2 Salk. 609.   *Rockwell's Case,* 1 Vern. 152. *Stamper* v. *Miller,* 3 Atk. 212.   *Roles* v. *Rosewell,* 5 T. R. 538. *Hardy* v. *Bern,* 5 T. R. 540.   *Walcot* v. *Goulding,* 8 T. R. 126. 2 Sw. Dig. 132.   *Downer* v. *Hazen,* 10 Vt. 418.   Rev. St. 311, §§ 1, 3.

4.   But if the statute of 1797 did embrace corporations, then it is insisted that it was repealed by the statute of 1815, upon the principle, that *leges posteriores priores contrarias abrogant.*   It contained no words of repeal, for the obvious reason, that it professed to provide for but one class of grantors,—while the former statute referred to all.   *Titcomb* v. *Union Ins. Co.,* 8 Mass. 326.   *Hussey* v. *The Manf. & Mech. Bank,* 10 Pick. 420.   *Manf. Co.* v. *Vanderpool,* 4 Cow. 556.   *Caruthers ex parte,* 9 East. 44.   *Harcourt* v. *Fox,* 1 Show. 520.   *Rex* v. *Cator,* 4 Burr. 2026.   14 Petersd. Ab. 516 n.   Ang. & Am. on Corp. 112.

IV.   But this deed is defective, under the statute of 1797, in three statute requisites.

1.   The name of the corporation is not subscribed to it by the officer executing it.   It is insisted, that the agent of a corporation, like the agent of an individual, must, in executing the deed, *subscribe the name* and affix the seal of the principal.   Ang. & Am. on Corp. 159, c. 7.   Moore 70, *pl.* 191.   13 Petersd. Ab. 510.   Am. Jur., No. 5.   *Savings Bank* v. *Davis et al.,* 8 Conn. 191.   The signature to this mortgage is defective, precisely like the case cited from Moore; the addition to the name of Hammond is merely descriptive. *Spencer* v. *Field,* 10 Wend. 87.   *Taft* v. *Brewster,* 9 Johns. 334. Deeds signed in this manner have been uniformly held insufficient to bind the principal ; and the reason assigned is, " the power of attorney vests no interest, or estate, in the agent, none can pass from him,

Isham, Adm'r, *v.* Bennington Iron Co. et al.

nor can any pass through him, unless in the name of the principal, who hath the estate." Payley on Ag. 153. 2 Kent 630. 1 Sw. Dig. 131. 1 Ph. Ev. 145. *Combe's Case,* 9 Co. 75. 2 Ld. Raym. 1418. 4 Str. 705. 2 East 142. *White* v. *Cuyler,* 6 T. R. 177. *Fowler* v. *Shearer,* 7 Mass. 14. *Elwell* v. *Shaw,* 16 Mass. 42. 8 Pick. 61.

It is attempted to establish this deed under the statute of 1797, upon the principle of the common law, that the signature of a corporation is its seal. But when the legislature required a deed to be signed· and sealed, the words were not used as synonymous; they are significant of the acts required to be done, and each hath acquired a determinate meaning by judicial decision. Pow. on Dev. 42, 51. 4 Vt. 471. 5 Johns. 237. 6 Cruise's Dig. 62. Neither under the statute of wills,—Jarm. on Wills 69 *b,* Pow. on Dev. 45, 17 Ves. 458, 3 Stark. Ev. 1682,—nor when an award is required by the submission to be under the hands and seals of the arbitrators, is sealing signing; Wats. on Awards 41, 217; 3 Stark. Ev. 1199; 6 Taunt. 645; 2 New Law Lib., No. 1, 54. In Sugd. on Vend. 501, it is said, a corporation affixing their seal is tantamount to a signing and sealing by an individual; and the authority cited is *Doe* v. *Flagg,* 1 N. R. 306. In that case the question arose upon the execution of a promissory note, under a statute which required the "name, or names, mark, or marks," to be signed to the note; and the court held, that "a corporation could only bind itself by its corporate seal," and the seal being affixed to the note was a sufficient compliance with *the words of the act.* The first point ruled, that a corporation could only bind itself by the corporate seal, is unsupported by authority; Ang. & Am. on Corp. 152–3. The case was decided upon the peculiar wording of the act, and the *dictum* of the court in 3 Lev. 1, that *signum* signified only a mark, and sealing was a sufficient mark. Pow. on Dev. 42. But in the statute of 1797 *signing* means a subscription of the grantor's name to the deed, and *sealing* means an impression upon wax, wafer, or other adhesive substance.

2. No officer, or agent, of the corporation was empowered by deed, or otherwise in writing, to execute this mortgage. It being proved, that the corporate seal is affixed to the deed, it is claimed, that the court will presume it was affixed by proper authority. But this presumption· is rebutted by the introduction of the corporate

records, which show that no vote was ever passed, authorizing Hammond to convey. Ang. & Am. on Corp. 157, 158. 8 Conn. 204, 210. *Lumbard* v. *Aldrich*, 8 N. H. 31. 2 Met. 163. Under the statute of 1797 it is insisted that a corporation could only empower an agent to convey their real estate by a power of attorney, executed in the manner required by the ninth section; Chip. R. 150, Ed. of 1793; *Savings Bank* v. *Davis et al.*, 8 Conn. 208, 210; and if they could not do that, then a power of attorney, executed as is required by the common law, must be adopted. 2 Kent 290. 8 Wheat. 338. 2 Plowd. 535.

3. This mortgage is not acknowledged, or proved, as the deed of the corporation, or president. *Hinde's Lessee* v. *Longworth*, 11 Wheat. 199; 6 Cond. R. 274. *Stanton* v. *Button*, 2 Conn. 527. *Pendleton* v. *Button*, 3 Conn. 406. *Hayden* v. *Wescott*, 11 Conn. 129. The certificate is not evidence of proof of the deed, because the contingency, upon which the proof of a deed will be taken in lieu of an acknowledgment, had not arisen.

The thirtieth section of the statute of 1797 will not aid this certificate; that section was not intended to permit any other execution of a deed, than that prescribed in the statute.

The opinion of the court was delivered by

Redfield, J. This is a case of great magnitude, and, on many accounts, of considerable difficulty; and having been three times argued before this court at great length, and with such uncommon thoroughness and ability, as to leave little ground for expecting much additional aid in that way; and having obtained the opinion of all the members of the court, who can act in the determination of the case, we have deemed it proper not longer to delay the decision. Of the two members of the court now absent, who were present at both the former arguments, the Chief Justice concurs with the decision made below, but in some respects upon different grounds, perhaps, and Judge Bennett with the opinion which is now to be pronounced, as the opinion of the court; and he also concurs, in the main, with Judge Kellogg and myself in the grounds of the opinion. Judge Davis, who concurs in the result, but not fully in the reasons and grounds by which we arrive at that conclusion, will deliver a separate opinion.

We have stated the results of the three consultations and intervening examinations of this case thus minutely, that the parties may be able to form a just estimate of the propriety of having the case farther discussed, and may perceive that every chance has been afforded the orator, which could reasonably be supposed to be of any avail. And we have all felt sincerely desirous of upholding the deed, if it could be done without too great violence to established principles. We will now state, as briefly as possible, the reasons, which have seemed to us invincible, in the way of such a determination. See Lord Denman's remarks, at the the close of his opinion in *Hilton* v. *Earl of Granville,* 48 E. C. L. 730. ·

It should be borne in mind, that here is no question in regard to the present validity of this deed, as against the corporation. They make no question of that kind; the bill is taken as confessed against them; and the orator is entitled to his decree, so far as they are concerned. And if it were originally defective as a statute conveyance, it is, at all events, evidence of a contract to convey; and a court of equity will, in such cases, always decree a conveyance *according to the contract.* And if there were any defect of authority originally in the persons who professed to act on the part of the corporation, the deed has been so repeatedly recognized, by votes of the corporation, as a good deed, that the corporation would now be held fully to have ratified it;—but this will not give it effect, as a *registered deed.*

But the great question in this case is, whether this deed was so executed, as to be entitled to registry, under our statute. If not, then clearly the orator cannot expect to prevail. For it has been too often determined to be now brought in question, that the *registry* of a defective deed is no notice of title to any one. It is not evidence of the facts which it contains, as the *original* would be. If defective, as a deed, in the formal requisites of its execution, or proof, it is not entitled to registration at all, any more than any other instrument whatever.

It will next be important to inquire, then, how a deed of land must be executed, to entitle it to registration. Upon this subject, we apprehend, there can be but one opinion. It must be executed according to the statute requisites, by which the registry of deeds is established. It never has been contended, since the enactment

of our statutes requiring deeds of land to be executed with certain specified requisites, that a deed, executed merely according to the common law requirements, was good to convey the land, or that such a deed was entitled to registration. And to establish such a proposition, at any time, would be a virtual repeal of the statute, and would be especially strange, not to say absurd, after more than half a century of uniform acquiescence in regard to the construction of the statute.

It must, then, be admitted upon all hands, that all deeds of land, to be entitled to registration, must conform substantially to the requisites of the statutes; in other words, that the statute mode of conveyance is *exclusive* of, and did, when it came in force, repeal all others, so far as it provided a *new mode* of conveyance. If, through design, or inadvertence, its provisions were wholly inapplicable to any class of persons, natural, or artificial, then, doubtless, their rights would not be affected by the statute in any way. They would remain just as they were before. In this state of the case it has been made a serious question in the argument, whether the plaintiff's deed was sufficient to have entitled it to registration, if the statute of 1797 were still in force, at the time the deed was executed. This, it seems to us, is taking for granted the main question in the case.

It seems to us, that, if we concede that corporations may convey land under the statute of 1815, and also under that of 1797, it follows, of course, that they may, also, in any of the modes pointed out by the common law, and that natural persons may, also,—which we have already considered, as to natural persons. But why artificial persons should any more be authorized to convey in *two* different modes, than natural persons, is certainly not easy to conjecture. It does not seem to us, that it ever would have occurred to any one, as a mere *a priori* argument. But when a case occurs, and especially one of such magnitude as the present, an anxiety to save it will suggest modes of argument, which nothing else, almost, will; and especially, when some technical requisite has been omitted *through inadvertence*, will courts go very far to uphold a conveyance,—and more especially, when it has been long acquiesced in. But this relaxation must have *some limits*, and must not be ex-

ercised by a mere arbitrary discretion of the court.   If that were so, no one could ever form any opinion what would not be held good.

Is there, then, *any rule*, by which this deed can be made good. No other, it seems to us, except to make out, that the statute of 1815 still left the statute of 1797 in force as to corporations.   This it seems impossible to maintain with any degree of plausibility. The statute of 1797, it is acknowledged on all hands, had no natural adaptation to the case of corporations.   It is matter of history, that the profession generally entertained serious doubts, whether a corporation could execute a deed in conformity with the statute of 1797,—whether, in fact, the common law mode of conveyance, as to corporations, was not still in force.   This is evidenced by the repeated specific provisions, contained in the charters of corporations before 1815, directing the mode in which they should convey their real estate.   This continued to be the very general practice of the legislature until the time of passing the statute of 1815; since that time these special provisions in charters have wholly ceased.

These facts constitute a legislatve declaration,—1, That the statute of 1797 was defective, as to its application to corporations; 2, That the statute of 1815 was passed to *remedy that defect;* 3, That subsequently corporations were expected to convey in accordance with the provisions of the latter statute.   The case, then, seems to us very much the same, as if this statute of 1815 had been *originally* a part of the statute of 1797,—as it now is of the Revised Statutes.   For all statutes in regard to the same subject matter are to be construed together, as parts of one system.   If, then, it had been provided originally, that *all* deeds should be executed in the manner pointed out in the statute of 1797, but that corporations might convey land by the deed of their president, reciting the vote authorizing the conveyance, when it was found that the general provisions *did not apply to corporations*, could there be any doubt, that the mode pointed out, in regard to them, was intended to be the *exclusive* mode, in which such bodies should convey land?   None, I apprehend, whatever.   But is not the present case, in connection with the acknowledged history of the occasion of passing the statute of 1815, quite as conclusive as the case supposed?

If the provisions of the statute of 1815 had been included in the charter of this corporation, it would, it seems to us, be somewhat difficult to argue, that they might still convey their land, in disregard of the specific provisions of their charter, under the general law of 1797, which had no natural adaptation to the case of conveyances by corporations, and which is, in fact, known to have been adopted with principal reference, and probably exclusive reference, to natural persons. It seems to us such a course of argument will find few advocates bold enough to defend it. But is it not a universal principle, in regard to the law of corporations, that their charters are subject to all the general laws, in force at the time of their creation, as much, precisely, as if those general laws had been specifically repeated in their individual charters? Was not that confessedly the intention of the legislature, in passing the statute of 1815? The facts already alluded to sufficiently show this.

The expression in the statute of 1815, "may convey" &c., is, it seems to us, not difficult of explanation. It is more consonant to sound sense and good taste, to use that form of expression, when the legislature is conferring a *power*, to be exercised at the discretion and for the benefit of the corporation. The form of expression "*shall convey*," when they might never have occasion to convey, would be very inappropriate to express the idea intended. But when some *duty* is *required* of the corporation, as *keeping records*, then the appropriate term is "*shall keep*,"—which we find to be the case in this very statute. How very absurd would an interchange of these forms of expression sound,—The corporation *may* keep records, but *shall* convey land.

We cannot, then, as we think, hold, that the statute of 1815 merely superadded another mode of conveyance by corporations, leaving the former mode, whatever it was, still in force, and giving them an election which to adopt, without violating the rules of construction already stated, and, still farther, holding that a subsequent statute, making *other* and *more specific* provisions as to the same subject matter, still leaves the former statute in force. We think no case can be found, going this length. It must be admitted, that the case cited from 3 Howard's Rep. goes great lengths,—no doubt to the very extreme verge of sound construction; but it stops far short of what is here asked for. It is, in fact, rather an authority in favor

of the view we adopt, in one particular, when it is held, that the subsequent *specific* provisions did repeal the former *general* provisions, in requiring justices of the peace to be commissioned by the court, in order to take the acknowledgment of deeds in the case under consideration.

Whether a new law, by implication, supersedes an old one upon the same subject cannot well be determined, in most cases, by any merely *a priori* rules of argument, or construction, but must depend very much upon the peculiar circumstances of each case,—the old and the new law,—the mischief and the remedy. If I were to illustrate the subject by a homely comparison, I could, perhaps, adopt none more in point, than that of the *discontinuance* of an old road by laying out a new one, merely, *without any other act.* If the new road wholly superseded any necessity whatever for the old one, then the old one would be *discontinued by implication,*—otherwise not.

The statute of 1815 seems to have been intended to put deeds executed by corporations upon the same footing with other deeds, executed by virtue of a *power*,—that is, that the power itself should appear upon the record. Hence the vote authorizing the president to convey land must be recited in the deed. We do not consider, that the corporation must always convey their land by an officer called a president. It does not seem very important, what the name of the officer, or agent, is, or whether he have any name; but the essence of the requisition is, that the deed must be executed in pursuance of *some vote of the corporation,* and that this vote must *be recited* in the deed. And this, we think, after the passing of the statute of 1815, was intended to be the *uniform* and the *only* mode of conveying land by corporations.

I know of no rule of construction of statutes of more universal application, than that later and more specific statutes do, as a general rule, supersede former and more general statutes, so far as the new and more specific provisions go. I think, too, that the case of *Wheelock* v. *Moulton*, 15 Vt. 519, has fully decided this very case, and upon this very ground. For although there were two grounds urged in that case, and both, to my mind, free from doubt, yet the court were *agreed* only upon the *first ground*,—that a deed *signed by all the corporators,* and professing to convey the land of the corporation, *was not binding upon the corporation,* unless ex-

32

ecuted *in pursuance of some vote of the corporation,* and *in con-formity with the statute of* 1815. *I thought,* to be sure, that that deed did not describe any land of the corporation; but upon that point the court *were not agreed,* and the case was decided, and was intended to be put, *mainly* upon the other ground. It is certainly a new mode of getting rid of the authority of a decision, that because it is put upon two grounds, it is authority upon neither.

But under the statute of 1797 we have to adopt a very liberal construction, in order to bring this case within its provisions. It is almost as difficult to save this case here, as upon the other ground, it seems to me.

1. In regard to there being any proper evidence of the consent of the corporators to the deed, before its execution. And if the deed was not executed by the consent of the corporators, at the time of its registration, then no after confirmation by the corporation will give it validity, as a *registered deed.* And if not a valid registered deed, then it will not take precedence of the defendants' attachments, unless upon proof of notice to them of the existence of the deed, after its confirmation by the corporation,—which is not attempted.

Upon the point of the consent of the corporation to the execution of this deed, I readily admit, that we are not to require unreasonable or unusual proof. If a corporation keep no records, and are by law required to keep none, then we must be satisfied by oral proof of the consent of the members;—and such is the rule at common law, and in many of the states. But in a case like the present, where the corporation keep continuous records of all their doings, as much as a town, or city, or other municipal corporation, and where these and all similar corporations are by express statute required to keep such "record *of all their doings,*" which shall be open to the inspection of all persons interested therein, is it unreasonable to require, that some consent to the conveyance shall be shown by such records, or at least by some vote of the corporation, when the members were regularly assembled *for that purpose?* Unless we do require this, we disregard the statute of 1815 in another important particular, and go back to the common law, or the law of New York, instead of the law of Vermont.

I do not insist, that there must have been a vote authorizing this

conveyance *in express terms.* But certainly there must have been this, or the appointment of such a board of directors, as would, by fair implication, possess this power. Nothing of this kind appears, —certainly, unless it is to be inferred from the fact of all the corporators being present at the time of the execution of this deed. But all except Hammond were present for the purpose merely of conveying *their stock.* They did not meet for the purpose of acting in regard to any corporate business, nor does it appear that they were at all *consulted in regard to it.* But they *now* say they consented to the execution of the deed,—that is, I suppose they made no *express resistance* and now think they *were willing* at that time. This is just that convenient degree of uncertainty, that will permit one to incline the evidence of consent according to his present wishes, or prepossessions. If these corporators *now* felt an interest in defeating this mortgage, can it be doubted, that they might, with perfect and strict regard to truth, testify that no vote, or consent, of the corporation was ever given to this deed, and that a majority of the corporators did not dissent, because they were not consulted, —and thus leave it, *where it is,* the mere act of the chairman?

It is not probable to my mind, that those, who advised the manner of executing this deed, supposed it was necessary to have the consent of any one, except Hammond, so far as the execution of the deed by the corporation was concerned, or that they had any suspicion, that the law governing the corporation required records of all their doings to be kept. This part of the statute is express; it is *shall,* and not *may;* and why was this provision of the law also disregarded? For the same reason, doubtless, that the whole business of this corporation has been conducted in reference to the law of another state. It is not a little remarkable, that the New York conveyancers, who drew this deed, should not have thought of the propriety of conforming to the laws of the state where the corporation was created, and where it existed, if any where, and where the land was situated.

Many of the views above expressed are certainly confirmed by the reasoning of the court in *Bank of United States* v. *Dandridge,* 12 Wheat. 64, 6 Pet. Cond. R. 440.

2. But if we could get over this point, it is still obvious, that this deed is not *signed,* within any fair and reasonable construction of

the statute of 1797. The statute requires a deed of land to be *signed*, for the very same reason that certain contracts are required by the statute of frauds to be signed,—that they may not be exposed to the uncertainty of oral proof. No one doubts, that such was the intention of our legislature, in requiring conveyances of land to be signed by the grantor. And I do not understand, that it is contended, that *signing*, in the case of a conveyance by *natural persons*, can be dispensed with. And I confess I do not well comprehend the force of the argument, which dispenses with signing by corporations. This is done in England, I admit, and in New York, in many cases.

This is urged, first, upon the ground of necessity. But there can be nothing in this. A corporation may *sign* a deed, as well as *seal* it. Both must be done by some agent. And so may natural persons do both these acts by the *hand* of some one, *in their presence*. But still there is a necessity that the *name* of the grantor should be *subscribed*, to designate it as his deed.

But it is farther said, that *sealing*, in the case of a corporation, is *equivalent to signing and sealing* by a natural person. But this is not true. The seal does not designate the corporation, any more than the seal of a natural person. If it were so, there might be some soundness in the argument. But being otherwise, I do not see why the *name of the corporation* should not be subscribed to the deed of land, as much as that of a natural person, and for the same reason. Upon any other construction, it seems to me, we make the conveyance to rest in *parol*, and that we might just as well dispense with *signing* in *all cases*.

3. I shall spend no time upon the acknowledgment. It is not attempted to be sustained upon the ground, that, being executed in New York, it may be proved according to their laws. Such a construction of our statute of conveyances has never obtained. *Proof of a deed by a witness* can only be resorted to in another state, when such a case occurs, as admits of *proof* in this state, as where the grantor *refuses to acknowledge, is dead, or has removed, &c.*

But this acknowlegment is much like the rest of the deed. It is no acknowledgment, no pretence of any such thing; it is proof, and nothing else,—treating Hammond as a subscribing witness to the deed. But, inasmuch as, if he could seal the deed, he could

Isham, Adm'r, v. Bennington Iron Co. et al.

also acknowledge it, we are asked to treat his testimony as an acknowledgment. That is undoubtely making it something, which it was never intended to be. But, as the one who attempted to prove it was the one to acknowledge it, if .any one had any such authority,—which is not shown,—if we could get along with the rest of the case, I think we could with this part of it.

The case of *Burrell* v. *Nahant Bank*, 2 Met. 163, is no authority for this case. The only question there was, whether the mortgage was good against the bank; and the court held it good, on the ground of ratification. The case of *Gordon* v. *Preston*, 1 Watts 385, comes very near in point, but differs in one essential particular from the present case. That deed seems to have been *in proper form*, and the only objection was a defect of *authority* in those who executed it,—which defect, it was held, was cured by subsequent ratification. Perhaps, if this deed had been a full compliance with the requisites of the statute, we should not have held it void for any irregularity in the original power to execute it, after long acquiescence. *The King* v. *Theodorick*, 8 East 543, only shows, that all the corporators, being present, may transact any business, being competent for them to do. But this must be understood, when no statute of the corporation forbids such action in such manner. I have no doubt, that the members, being all present, might have conferred the authority;—and so might they in the case of *Wheelock* v. *Moulton*, 15 Vt. 519. But it was expressly held in that case, that all the corporators signing the deed did not amount to the action of the corporation. There must be some action as a *corporation*,— some consent given with *intent to bind the corporation*.

*Beckwith* v. *Windsor Manufacturing Co.*, 14 Conn. 594, was a case against the corporation merely, and the deed was executed in pursuance of a vote of the corporation. The only question in that case was, whether the vote must be under seal, or recorded in the town clerk's office. *Derby Canal Co.* v. *Wilmot*, 9 East 360, seems to recognize the principle, that affixing the seal of a corporation is sufficient to pass the title to land, if it be done with that intent. But there is no pretence, that the common law of conveyance is in force here. The cases from New York show, most undoubtedly, that such is the rule there. 6 Paige 56. 3 Johns. 226. But these decisions cannot affect the present question. This deed is no doubt

good enough in New York, and was executed with reference to their laws. From the case of *The Proprietors of the Mill Dam Foundry* v. *Hovey,* 21 Pick. 417, it is evident the practice in Massachusetts is, that deeds of land by corporations are to be *signed* by some *agent* authorized to do so, as well as sealed.

The result is, that the decree of the chancellor must be reversed, and the case be remanded to the court of chancery, with a mandate to dismiss the bill, with costs, as to all the defendants except the corporation, and to allow the orator to take such a decree as he may be advised against the corporation, consistent with the scope of his bill.

The decree of the chancellor, dismissing the cross bill, is affirmed, with additional costs.

DAVIS, J. While I concur in the result just announced by the presiding judge, I find myself compelled to dissent from several of the positions assumed in the opinion delivered; and as they embrace points of much practical importance, which may hereafter come under discussion, I feel unwilling to let the occasion pass without some remarks in reference to them. The strong and acknowledged equity of the orator's claim, I confess, inclined my mind to yield assent to the arguments and authorities adduced to obviate mere technical objections to this mortgage. Notwithstanding this natural bias, and notwithstanding there are respectable authorities which go the full length of sustaining it, still, after such consideration as I have been able to give the subject, I am constrained to admit, that, on some material points, the weight of reason and authority seems to be adverse to the validity of the orator's claim.

Besides, this case has been, I am informed, three times argued before this court, and first and last, at least, before all the judges competent to sit in it. On the present occasion much labor and research have been bestowed upon it by the counsel on both sides. Having reference to the known and supposed opinions of the other members of the court, I am satisfied, that, were my doubts of the propriety of the general result more tenacious than they really are, it would be my duty, as the junior member of the court, to surrender them, rather than be the means of protracting an expensive controversy, with no prospect of farther elucidation, and with little or no reason to anticipate in the end a different result.

That this mortgage must fall before the statute of November 3, 1815, if that statute is to be regarded as the sole source of authority in the corporation to convey their lands by mortgage, I have no doubt; for the deed does not purport to have been executed by any one as president of the corporation, nor does it contain any recital of a vote empowering Mr. Hammond, or either of the other two persons, whose names and seals are affixed to the instrument, as president, director, or in any capacity, to execute the same.

This instrument is in the form of an indenture between three parties, the Bennington Iron Company,—Charles H. Hammond, Nathan Leavenworth and Duncan P. Campbell,—and Francis Depeau, the orator's intestate. It purports to have been signed and sealed by Hammond, as chairman of the company, and by Hammond, Leavenworth and Campbell, as individuals, but is not signed by Depeau, who is, in the body of the instrument, styled the party of the third part. It recites the act of incorporation, the fact that the three individuals above named were the sole owners of the capital stock, and that the corporation and the stockholders were jointly indebted to the orator's intestate in $20,000, for which they had given their joint bond, conditioned for the payment of the same by a time specified, and then proceeds to convey by mortgage, to secure the payment of said sum of money, certain lands in Bennington, belonging to the corporation, and also the shares in the capital stock owned by the above stock holders.

By reference to the act of incorporation it appears that a president is not particularly provided for; and it does not appear, that such an officer was in existence at the date of the mortgage. There was not and could not therefore be a compliance with the requirements of section three of the statute of 1815. A vote authorizing the chairman, if indeed it is not absurd to suppose the continued existence of an officer by that name, to make a conveyance would be no compliance with the law. The deed, however, recites no such vote; and it is not pretended, that, in point of fact, any such vote was ever passed. Were it otherwise, the declaration on oath of Mr. Hammond, that the seal affixed to his name was the corporate seal, and was so affixed by him by and under the authority of the corporation, whether made in the form of an acknowledgment be-

fore the commissoner in New York, or otherwise, cannot be received as a substitute for the antecedent corporate vote, and the recital thereof on the face of the deed, as required by the statute.    Even if this kind of evidence were admissible, it falls short of the statute requirement, inasmuch as the authority claimed has reference only to the affixing of the seal, and has none whatever to the signature. Signing by the principal, or by a properly constituted agent, is at least as essential as sealing; and no valid conveyance by deed could be made without one, as well as the other.

These considerations are abundantly sufficient to satisfy me, that, under the statute of 1815, this mortgage cannot be supported.    Had the whole question rested here, I should not have felt called upon to make any remarks.    I cannot accede to the position, that this statute must be so construed, as to exclude every other mode of alienation by a corporation previously in existence.

There is nothing in its language importing any such exclusion. It is the first general statute, indeed, specially providing for conveyances of real estate by corporations; yet it is not seriously pretended, that, prior to 1815, turnpike, manufacturing, and other corporations, most of which were, in their several charters, authorized to purchase and convey real estate, could not, under the law then in force, make a valid conveyance by mortgage, or otherwise.

The general statute of 1797, prescribing certain formalities to be observed in the conveyance of real estate, though it does not name corporations, and though its language, in some respects, seems not precisely adapted to these artificial persons, has nevertheless been always understood to authorize conveyances by them.    They can, indeed, neither sign, nor seal, a deed, nor acknowledge it before a magistrate, as required, without the intervention of an agent; but by such agent they can do all of these acts.    Under that statute this corporation could have executed a valid mortgage of their lands to Depeau, unless it is to be regarded as superseded by the statute of 1815.    Whether this conveyance is, in fact, in conformity to the former statute, I shall consider presently.

It is unquestionably true, that a subsequent statute may often be construed as abrogating an antecedent one, without special words of repeal, or extension.    Many cases of this kind are to be found in our statute book.    If it can be fairly presumed, from the generality

of the language used, the nature and completeness of the new provisions adopted, or the incompatibility of the old and new enactments, that it was the intention of the legislature to substitute a new and entire system in lieu of and exclusive of the old one, the substituted provisions should then be construed in the same manner, as if in terms made exclusive.

Tried by these tests, I cannot concur in the opinion that no conveyance by a corporation can avail, unless made in conformity to the statute of 1815. The scope and object of the statute, as well as its title and language, clearly indicate, that it was not the purpose of the legislature to introduce any new and exclusive mode of conveyance, applicable to all corporations, or even to turnpike and manufacturing corporations. It begins by declaring the shares in those of the last named description to be personal property, and proceeds to designate the manner, in which they may be attached on *mesne process*, and sold on execution, as such. It points out the mode of proceeding, when no clerk exists, in case of non-payment of any tax, or assessment, authorizes the first named to hold land for the accommodation of toll-gatherers, imposes a penalty for taking excessive toll, or unreasonably delaying travellers, for defacing sign boards, injuring the road, &c., and concludes by requiring *said corporations* to keep records of their doings, designate the shares by numbers and the proprietors of each by name. Throughout, no allusion is made to any other description of corporation, except in the third section, designating the mode of conveying real estate, in which the words "turnpike, manufacturing, or *other private corporation*," are introduced. An additional statute, passed in 1817, provides a penalty for the neglect to appoint a clerk, and for refusal to exhibit by-laws and records; these additional provisions are confined entirely to the two kinds of corporation above named.

Many religious, eleemosynary, literary and other corporations had been created in this state before 1815, empowered to hold and convey lands; and many others have been created since. I apprehend it is contrary to reason and all sound principles of construction, to infer an intention to abrogate modes of conveyance theretofore recognized as valid in respect to these, from a loose general expression like the above, having no reference whatever to such corporations, but merely to certain specified corporations.

33

I am of opinion, from these considerations, that all such bodies may still alienate their real estate in the same way and with the same formalities they could have done previously to 1815, unless, indeed, the clause in the recent Revised Statutes shall be construed as more comprehensive than the former statute. True, the Bennington Iron Company was a manufacturing corporation, and as such came within the scope of the statute of that year. But my object is not to prove that the mode indicated in the third section is not applicable to this case; it is only to shew, that it is not the ex-·clusive one. It is a question of construction merely, and, as such, the fact, that in all other cases the legislature have left the law as it was, affords strong presumption against the exclusive character of the special enactment adverted to.

This point was not under consideration in the case of *Warner* v. *Mower et al.,* 11 Vt. 385. In the case of *Wheelock* v. *Moulton et al.,* 15 Vt. 519, it is indeed said, that, "by the law of this state corporations can only convey their lands and real estate by the deed of their president, reciting the vote of the corporation, authorizing the conveyance." The case, however, required no opinion of this kind. The important point decided by the court was, that a mortgage of all the shares in a corporation, by two individuals, being the sole owners thereof, could not operate as a mortgage of the real estate of the corporation, notwithstanding the shares were, in the mortgage deed, described to be land. Nothing can be clearer, than the distinction between the lands of such a body, owned by the as-·sociation collectively, as real estate, and the shares in its capital stock, owned severally, by the individual members, which the statute of 1815 declares shall be considered, what in fact they were usually considered, independent of the statute, personal property. That the conclusion to which the court came, adverse to the claim asserted by the mortgagee, that such a conveyance operated as a mortgage of the lands of the company, was correct, it is difficult to doubt. Indeed, in the language of the learned judge who delivered the opinion in that case, it is past my comprehension, how it could ever have been suspected, that such a deed was intended to carry with it the real estate. This is all, that the case required to be decided. Whatever observations, therefore, fell from the judge in respect to the authority of the owners of all the shares to convey

the corporate lands, or the manner in which the corporation could have conveyed them, whether by a corporate vote, recited in the deed, or without any such vote, whether under the corporate seal, or the seal of the president, was but the individual opinion of the judge, and is not regarded as authoritative. I do not, therefore, understand, that it has ever been judicially determined by this court, that corporations can convey their real estate in no other way, than that pointed out by the statute of 1815; and in these remarks my object has been to prevent my own concurrence in the judgment in the present case from being regarded as influenced at all by the reasoning on this point in the main opinion.

The important question with me has been, whether this mortgage could be sustained under the statute of 1797. That statute, which, as already said, is general in its terms, makes *signing and sealing* by the grantor essential to the validity of a deed. If done by an attorney, agent, or other person, in pursuance of competent authority from the principal, it is the same as if done by the latter. The corporation seal was affixed, as it is to be presumed, by competent authority; but the deed is not signed by it; the only signature purporting to be for the company is that of C. F. Hammond, chairman. There is no difficulty in complying with the statute in this respect. No doubt an agent must be constituted, either by deed, as before 1815, or by vote simply, under that statute. When so constituted, he can sign the corporate name,—as, "The Bennington Iron Company, by C. F. Hammond," or "C. F. Hammond, for The Bennington Iron Company." Either of these modes would answer. The deed must be that of the principal, and sealed with his seal. *Hulle v. Heightman,* 2 East 145. In the present case the corporate name is not affixed to the instrument by Hammond, or any other person. Signing as "Chairman" does not obviate the difficulty; for it is but *descriptio personæ.* Nothing on the face of the deed goes to show, that the corporation had, in any manner, constituted Hammond their agent, or attorney, with power to execute the mortgage; he does not directly profess to execute it in their behalf. He seems to have assumed that his possition as chairman dispensed with all this, and rendered his signature as such equivalent to affixing the corporate name. This was a fatal error, and neither the affixing

the corporation seal, nor the statement, under oath, in the subsequent acknowledgment, can be regarded as supplying the deficiency.

Although there are authorities to the effect, that simply affixing a seal is tantamount to both signing and sealing, especially in respect to corporations, which were said to speak and could only speak by their common seal, the doctrine is antiquated and obsolete; and, if I am right in supposing that a corporation can at all make a deed of conveyance under the statute of 1797, every sound principle of construction forbids the idea, that, when both signing and sealing are expressly required, and both are equally practicable, one is to be understood as comprehending the other.

A similar objection lies against the acknowledgment, required in this case to uphold this mortgage against the antagonist claims of creditors. It is not acknowledged by any one assuming to act in behalf of the corporation, as the deed of the corporation, which it is, if anything. Whatever efficacy it may have as a conveyance of the shares, it can have none as a mortgage of the lands of the company.

On these grounds, mainly, I concur in denying to the orator a right to foreclose, as against those defendants, who have claims upon the mortgaged lands as attaching creditors. I am satisfied, also, that the deed, on the face of it, should carry some general statement of the nature of the authority and the character, or capacity, in which the agent assumes to make the conveyance. This may be by vote, by power of attorney, or other deed, empowering the agent to act in the matter. This deed purports, indeed, to be tripartite, one party being the corporation; but there is no statement of any fact, or circumstance, indicating, *prima facie,* that Hammond, or either of the other persons, whose names are affixed, was vested with authority to bind the corporation. The addition of "chairman" imports no such authority, any more than would the word director, clerk, stock-holder, member, or any other; for *non constat,* that such addition has anything to do with the right to sign and seal a deed for the company. Our registry system required, that, when a conveyance should be made by attorney, under a power, this latter instrument, as well as the conveyance, should be recorded. No inference on this point can be drawn from the fact stated, that all the stock-holders signed the deed. This was necessary, in order to

Isham, Adm'r, *v.* Bennington Iron Co. et al.

convey their individual shares. Neither collectively nor separately do they profess to be clothed with the power to execute a deed for the corporate body.

Such acts of ratification subsequently, as are relied upon by the orator, whatever avail they may be of as between him and the corporation,—and no defence is here set up by the latter,—cannot be interposed, to turn aside the rights of the other defendants, even though they took place previous to the attachments, and though they were apparent on the corporate records.

In conclusion, I will remark, that, in considering the case in reference to the statute of 1815, I am unwilling to give so stringent a construction to the language of the third section, as has been given by the presiding judge. That the deed of the president, literally, under his own seal, reciting the vote, &c., will satisfy the terms of the statute, I am not disposed to question. A close adherence to the letter will, perhaps, justify such a conclusion. But I am far from thinking, that a deed of the corporation, under their seal, signed by the president, as such, for the corporation, and reciting the vote, would not equally carry out the intention of the legislature. Such would, in a sense, be as much the deed of the president, and a conveyance by him, as the other ; inasmuch as his concurrence, in his official character, is required, to give validity to it. This view of the subject may be thought to receive some countenance from the phraseology employed in the late revision, which seems to have intended to extend the provision to all corporations, public, or private, and yet uses language, without apparent intention to depart from the previous provision, which clearly supposes the deed to be that of the corporation, through the intervention of the agent, authorized by vote, whether he be president, or some other person, either in or out of the corporation.