LINCOLN UPHOLSTERING COMPANY, APPELLEE, V. LEON BAKER ET AL., APPELLANTS.

FILED NOVEMBER 6, 1908.    No. 15,355.

1. **Dormant Judgment: ATTACHMENT LIEN: MERGER.** In an action aided by attachment, upon the entry of judgment the attachment lien is merged in that of the judgment, and thereafter the lien is a mere incident to the judgment and ceases to exist when the judgment becomes dormant. *Harvey v. Godding*, 77 Neb. 289.

2. ———: **EXECUTION: INJUNCTION.** A proposed sale of real estate under an execution issued on a dormant judgment will be enjoined at the suit of one who acquired title to the property during the life of the judgment lien.

3. **Judgment: INTERVENTION: DISMISSAL.** One who intervenes in an action between third parties may dismiss his intervention without prejudice, and after such dismissal a judgment entered in the action will not affect his interest in the matter in litigation.

APPEAL from the district court for Lancaster county: LINCOLN FROST, JUDGE. *Affirmed.*

*Samuel J. Tuttle, J. B. Strode* and *O. B. Polk,* for appellants.

*John M. Stewart, D. H. McClenahan* and *E. F. Pettis,* contra.

DUFFIE, C.

The action is for an injunction and to quiet title. Prior to the year 1890, Victoria L. Harford was the owner of a part of lot 1, township 10, of range 6, in the city of Lincoln, and while such owner she mortgaged the same to the New Hampshire Trust Company or Hiram D. Upton, its president, to secure a loan of $8,000. One Holland, an attorney residing at Seward, Nebraska, had charge of the Nebraska business of the New Hampshire Trust Company, and from his testimony it appears that most, if not all, mortgages securing loans made by that company were taken in the name of Upton. In the early part of 1901

the Harford mortgage was sold to the Newport Savings Bank, and, default in payment being made, it was foreclosed and the property bid in by Upton for an amount less than the amount of the decree. The deed was made to Hiram D. Upton, in whose name the mortgage had been foreclosed, but there is no dispute in the evidence that at that time the Newport Savings Bank was the owner of the note and mortgage, and the equitable owner of the decree entered in the foreclosure proceeding. Upon discovering that Upton had bid in the property, the Newport Savings Bank insisted that the property be conveyed to that institution, and thereupon Upton conveyed the property to the New Hampshire Trust Company, and that company conveyed to the Newport Savings Bank. These deeds are dated October 23, 1893.

In September, 1894, the several parties, defendants in the several actions above entitled, commenced separate actions in the district court for Lancaster county against Hiram D. Upton and the New Hampshire Trust Company, and caused writs of attachment to issue and to be levied upon the real estate in controversy herein. Thereafter, and before these cases proceeded to trial, C. E. Holland, the attorney above referred to, appeared in the actions, and asked and obtained leave to file a petition of intervention on behalf of the Newport Savings Bank. He afterwards filed an answer, alleging title to the attached property in the intervener, but before final judgment he obtained leave to dismiss his intervention proceeding, and judgment in these several cases went in favor of the plaintiffs in said actions and against the New Hampshire Trust Company only, and an order was entered directing the sale of the attached property. These judgments were entered on October 1, 1895. The Brown Lumber Company procured an execution on its judgment May 5, 1900, which was returned *nulla bona*. No other executions were issued until December 15, 1905, when all the parties plaintiff secured executions on their several judgments, under which the

sheriff was proceeding to sell the property when the plaintiff herein commenced these actions to enjoin the sale and to quiet its title to the premises. The plaintiff claims title through a deed from the Newport Savings Bank of date of April 13, 1904, and it has been in actual possession of the premises since about that date. As the matters in dispute and the evidence on the issues made are common to all the cases, they were consolidated and tried together, and by stipulation of the parties the appeal to this court is to be heard upon one record. The district court entered a decree enjoining the defendants from enforcing their judgments against the land in controversy and quieting the plaintiff's title thereto.

It will be observed from the statement above made that the attaching plaintiff obtained judgment against the New Hampshire Trust Company more than ten years prior to the taking out the executions sought to be enjoined in this action. The Brown Lumber Company alone took out an execution May 5, 1900, but as this was more than five years prior to the issue of the execution issued December 15, 1905, it is evident that all of the attachment judgments were dormant and had ceased to be a lien upon the attached property when these later executions were issued. It is argued by the defendant that the attachment lien did not become merged in the judgment lien, and that it is immaterial whether their judgment became dormant or not; that the attachment lien still exists and may be enforced against the attached property. In 4 Cyc. 625, it is said: "An attachment lien on real estate continues until judgment in the suit has been entered and docketed, when it merges in the judgment lien." The authorities cited in support of the above quotation make it apparent that this is the general rule. In Drake, Attachment (7th ed.), sec. 224a, it is said: "If the plaintiff neglects, within the lawful period of his judgment lien, to subject the property to execution, the lien of the attachment does not revive on the expiration of the judgment lien." This question was thoroughly considered by this court in *Harvey v. Godding,*

77 Neb. 289. Two of the propositions established in that case are applicable herein. Relating to the attachment lien, it is said: "In an action aided by attachment, upon the entry of judgment the attachment lien is merged in that of the judgment, and thereafter the lien is a mere incident to the judgment and ceases to exist when the judgment becomes dormant." Relating to the rights of a purchaser of real estate during the existence of a judgment lien, it is said: "A sale of real estate under an execution issued on a dormant judgment is void as to one who acquired title to the property from the judgment debtor during the life of the judgment lien." We are still satisfied with the holding in that case, and see no reason why a different rule should be applied here. It results, therefore, that the judgment and attachment lien of the defendants had ceased to exist when they took out executions to enforce their judgments against the property in controversy, and that they have no foundation upon which to base their claim; the property in the meantime having been purchased by the plaintiff.

It is asserted with much confidence that the deed of the Newport Savings Bank to the plaintiff, the Lincoln Upholstering Company, was not properly executed and did not pass title. The deed in question was executed on behalf of the bank by its treasurer and secretary. Section 4129, Ann. St. 1907, is as follows: "It shall be lawful for any corporation to convey lands by deed, sealed by the common seal of said corporation, and signed by the president or presiding officer of the board of directors of the corporation; and such deed, when acknowledged by such officer to be an act of the corporation, or proved in the usual form prescribed for other conveyances for lands, shall be recorded in the clerk's office of the county in which the lands lie, in like manner as other deeds." Invoking the well-known rule that each state has the right to prescribe the manner in which lands lying within the state may be conveyed, it is argued that the statute above quoted prescribes an absolute and exclusive manner in

which lands of a corporation may be transferred. In support of the contention, we are referred to *Wheelock v. Moulton*, 15 Vt. 519, and *Isham v. Bennington Iron Co.*, 19 Vt. 230, in which Judge Redfield in construing a somewhat similar statute held that it provided an exclusive method for conveyance by a corporation. But, in *Morris v. Keil*, 20 Minn. 531, the supreme court of Minnesota had under consideration a statute in the following words: "Every corporation authorized to hold real estate may convey the same by an agent appointed by vote for that purpose." Replying to the claim that this statute excluded every other method of corporate conveyance, the court said: "We think that the purpose of this provision was to point out one way in which a corporation might properly make a conveyance of real estate; but there is no reason for supposing that the intention was to exclude the other and very common practice of a conveyance by the corporation through one or more of its regular officers, for instance, its president, secretary, or treasurer, instead of through an agent appointed by vote for that particular purpose." In the case we are considering, while the charter of the Newport Savings Bank is not in evidence, the treasurer testified as follows: "The officers are composed of a president, vice-president, secretary and treasurer, and board of trustees. The treasurer is the executive officer of the bank, and has the general oversight of its entire affairs and general management, and is the officer who executes all papers in behalf of the bank. The president, vice-president and trustees act as directors, and meet once a month usually to consult with the treasurer and approve loans." Under the issues presented here we are inclined to hold with the Minnesota court that the statute is not exclusive, but that a conveyance of real estate executed by a general officer of the bank, and especially by an executive officer with whom the secretary joins, is a valid conveyance and sufficient in law to convey title.

The defendants further urged that the right of these

savings banks were adjudicated in the attachment cases in which Holland intervened on behalf of that bank. This claim is based upon the fact that, in addition to the petition of intervention filed by the bank, it also filed an answer in each of these cases, and that before the final determination of the case it dismissed its petition of intervention only, allowing its answers to stand. The final order of the court relating to the intervention proceedings is as follows: "Now on this day came the parties hereto by their attorneys, and trial of this cause is now had to the court, and, after hearing the testimony of witnesses adduced, the same is submitted to the court for consideration, and the defendant Newport Savings Bank and Woonsocket Institution for Savings in open court dismiss their petition of intervention herein without prejudice to a new action." Section 50b of the code, relating to intervention, is as follows: "The court shall determine upon the intervention at the same time that the action is decided, and if the claim of the intervener is not sustained he shall pay all costs of the intervention." The final judgment entered in the attachment cases makes no reference whatever to the claim of the intervener, the Newport Savings Bank. On the question of its claim to the attached property the judgment is entirely silent. It is evident, therefore, that the court and the parties understood that the Newport Savings Bank was out of the case, and that its claim had been withdrawn from the consideration of the court and the right reserved to assert it in another action. This being the case, it would be a gross injustice for us to hold that it was bound by the judgment entered in cases in which it is not named, in which its claims were not considered, in actions from which the court and all parties in interest understood it had been dismissed.

A careful review of the record convinces us that the court was right in entering the judgment appealed from, and we recommend its affirmance.

Epperson and Good, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.